OPINION
This timely appeal arises from Appellants' convictions in the Court of Common Pleas of Columbiana County, Juvenile Division, for violating R.C. § 2919.24, contributing to the unruliness or delinquency of a minor. The conviction stems from allegations that Appellants kept their daughter home from school approximately twenty days between September 9, 1998, and December 7, 1998. Appellants argue that the school's failure to follow its own policies with regard to notifying parents about multiple unexcused absences requires that the convictions be reversed. For the following reasons we agree with Appellants and reverse the convictions.
Appellants are the adoptive parents of a minor child who was enrolled as a first grader in United Local Elementary School in Columbiana County, Ohio, during the 1998-99 school year. The child was regularly absent from school during the first half of the school year.
The school distributed a handbook to all parents at the beginning of the school year which explained the school's policies regarding excused and unexcused absences.
The handbook stated:
"A. Excused Absences
 Students absent from our school will receive excused absences when they bring a note to school written by the parent or guardian stating the date and reason for the absence. Anytime a student is not in school, a written note of excuse must be sent in on the day the student returns to school. Written notes are required after every absence. The notes are kept on file for the school year.
The handbook also stated that:
 "Three days of unexcused absences will result in a written notification to the parents of the laws of compulsory education. Five days of unexcused absence will result in an informal conference with the parents, child and probation officer. Ten days of unexcused absence will result in a formal court hearing."
Appellants did not send written notes to the school after any of their daughter's absences. On some occasions they did call the school or speak directly to school officials to explain why their daughter was absent. The typical explanation was that there was a medical problem. Prior to November 16, 1998, the school accepted Appellants' verbal explanations of their daughter's absences as valid excuses. (Tr. pp. 134-36).
On or about November 16, 1998, Appellants filed an application with the Columbiana County Educational Service Center ["CCESC"] seeking permission to home school their daughter. Appellants immediately kept their daughter home from school to begin this home schooling. They had been warned by CCESC that their daughter would be considered truant from school if she were absent while the application was being processed. Appellants did not immediately notify the school that they had applied for home schooling. They also did not explain to the school why their daughter was absent after November 16, 1998.
On November 16, 1998, Elizabeth J. Barringer from the CCESC sent a letter to Appellants acknowledging receipt of their home schooling application and requesting additional information. The letter stated: "[a]fter we receive the requested information, we will approve home schooling for the 1998-99 school year." (emphasis added). The letter requested curriculum information for the study of music and a copy of the diploma or degree of the person who would be teaching. Appellants delivered the required information to CCESC and continued to keep their daughter home from school while the home schooling application was pending.
On November 19, 1998, Ms. Barringer of CCESC contacted Ms. Rinto, Principal of United Local Elementary School, explaining that Appellants' application for home schooling had been denied. At this point Ms. Rinto had not yet received notice from Appellants that they were applying for home schooling. Ms. Rinto did not attempt to contact Appellants after November 19, 1998, to inform them that their application had been denied or that their daughter was expected to be back in school.
On December 1, 1998, Paul Hood, the superintendent of CCESC, wrote to Appellants informing them that their application had been denied. The letter did not explain the reasons for the denial, nor did it explain how to appeal the decision.
On December 8, 1998, Ms. Rinto filed a complaint against each Appellant in the Columbiana County Court of Common Pleas, Juvenile Division. The complaint charged Appellants with violating R.C. § 2919.24, contributing to the delinquency of a minor, listing approximately twenty days in which their daughter was not at school between September 9, 1998, and December 7, 1998. The cases were consolidated and proceeded to jury trial on April 26, 1999. On April 27, 1999, the jury returned a verdict of guilty for each of the Appellants. On May 26, 1999, Appellants were each sentenced to serve seven days in jail and pay fines of $250.00. The sentences were stayed pending appeal.
Appellants first assignment of error states:
 "I. APPELLANTS WERE DENIED DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF THE STATE OF OHIO.
 "A. UNITED LOCAL SCHOOLS FAILED TO FOLLOW ITS OWN POLICIES REGARDING STUDENT ABSENCES, AND THEREBY, DENIED APPELLANTS DUE PROCESS.
 "B. THE APPELLANTS' CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE, AND THEREBY, CONSTITUTE A DENIAL OF DUE PROCESS.
 "C. THE PROSECUTION MADE REPEATED IMPROPER STATEMENTS THROUGHOUT THE TRIAL, WHICH STATEMENTS DENIED APPELLANTS A FAIR HEARING."
Although Appellants raise three issues in this assignment of error, our ruling as to issue number two, which deals with insufficiency of the evidence, renders the remaining issues, as well as Appellants' second assignment of error, moot. As such, we will only address the dispositive issue in Appellants' first assignment of error. App.R. 12(A)(1()c).
Appellants argue that in order to be convicted of contributing to the delinquency of a minor, R.C. § 2919.24, the state needed to prove beyond a reasonable doubt: (1) that their daughter was absent from school without excuse on the days listed in the complaint; (2) that the unexcused absences constituted habitual truancy; and (3) that some action of the Appellants contributed to their daughter's habitual truancy. Appellants contend that there was insufficient proof that the absences listed in the complaint were unexcused absences because the school did not follow the procedure described in the Parent/Student Handbook for dealing with unexcused absences. We find Appellants' argument persuasive.
"Sufficiency" is a legal standard that is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. In essence, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law, and a conviction based upon legally insufficient evidence constitutes a denial of due process. Id. To reverse a trial court's judgment on the finding of insufficient evidence, an appellate court need only have a concurring majority of the reviewing panel. Id.
Appellants were each convicted of violating R.C. § 2919.24, which states:
"(A) No person shall do either of the following:
 "(1) Aid, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child, as defined in section 2151.022
of the Revised Code, or a delinquent child, as defined in section 2151.02 of the Revised Code;
 "(2) Act in a way tending to cause a child or a ward of the juvenile court to become an unruly child, as defined in section 2151.02 of the Revised Code."
The statute permits the state to charge an alleged offender either as one who "contributes" to unruliness under R.C. § 2919.24(A)(1), or as one who acts in a way "tending to cause" unruliness under (A)(2). Under Ohio case law, a distinction exists as to the elements necessary to prove "contributing" and "tending to cause" the delinquency or unruliness of a minor child. State v. Andriola (1990), 70 Ohio App.3d 69, 70. When the charge is "contributing," the state is required to prove the actual delinquency of the minor child as an element of the crime. Id.; State v.Thompson (1994), 97 Ohio App.3d 629, 633; State v. Miclau (1957),167 Ohio St. 38, paragraphs one and two of syllabus (interpreting former R.C. § 2151.41). When the charge is that a defendant or defendants acted in a manner "tending to cause," it is unnecessary to establish the actual delinquency or unruliness of the minor child. Andriola, supra,70 Ohio App.3d at 70.
In the case at bar, the complaints charged Appellants under the "contributing" section of the statute, and therefore, the state was required to prove that the minor child was actually delinquent or unruly as an essential element of the crime. One definition of "unruliness" is defined in R.C. § 2151.022 as follows:
 "As used in this chapter, `unruly child' includes any of the following:
"* * *
 "(B) Any child who is an habitual truant from home or school."
The term "habitual truant" is not defined in R.C. Title 21 or 29. R.C. § 3313.609, dealing with the requirements for promoting a student to the next grade level, defines "truant" as, "absent without excuse." Ohio Adm. Code 3301-47-01, dealing with educational programs for parents of truant students, defines "truant" as, "being absent without permission of parent and in violation of board of education attendance policy." Using either definition, a school board's policy regarding permitted or excused absences is crucial in determining whether "habitual truancy" has occurred.
This Court has held that, "boards of education have a wide area of discretion with which the Courts will not interfere in the absence of a showing of an abuse of discretion." Youngstown Ed. Ass'n. v. YoungstownCity Bd. of Ed. (1973), 36 Ohio App.2d 35, 41. R.C. Title 33 vests Ohio's boards of education with the power and discretion to manage and regulate the schools and students under their control. Commons v. Westlake CitySchools Bd. of Edn. (1996), 109 Ohio App.3d 706, 712. R.C. §3321.04(C) gives local school boards the power to determine, "the manner in which any child may be excused for absence from such school for good and sufficient reasons." Once a school board has used its discretionary powers, the courts should not interfere except where the boards have acted arbitrarily or abused their discretion, or where there is fraud, bad faith, or collusion on the part of such boards in the exercise of their statutory authority. Russell v. Gallia Cty. Local School Bd. (1992),80 Ohio App.3d 797, 803-804.
Appellee presented evidence at trial of the United Local Elementary School's policies concerning unexcused absences as contained in the Parent/Student Handbook. Appellee needed to prove at trial that Appellants' daughter was "habitually truant" under the standards set forth by United Local schools. Appellee presented extensive evidence that the minor child was habitually absent from school, but truancy involves more than mere absenteeism. There must also be proof of a lack of excuse and lack of permission as established by school board policy.
Appellee argues that the Parent/Student Handbook put Appellants on notice that absences would be considered unexcused unless a written note explaining the absence was sent to the school on the day the student returned to school. Throughout trial, though, Appellants raised a defense by referring to the section of the handbook which stated that three days of unexcused absences, "will result in written notification to the parents of the laws of compulsory education." After Appellants had raised this as a defense, Appellee was required to present some competent, credible evidence that the school had sent written notice to Appellants that their daughter had been absent without excuse for three or more days. Without such proof, the evidence on record can only be construed as showing that two or fewer unexcused absences had occurred, which does not satisfy the essential element of habitual truancy under R.C. §2919.24 and R.C. § 2151.022. It is uncontroverted that the record is void of any evidence of such a three-day notification letter. The record is also clear that the school did not request an informal conference with the parents after five days of unexcused absences, as required by the Parent/Student Handbook.
Appellees argue that Appellants were put on notice of the unexcused absences both by the school handbook and by statements made by Ms. Barringer of the CCESC that their daughter would be considered unexcused during the pendency of their home schooling application. That argument must also fail because the requirement in the Parent/Student Handbook that the school send a three-day letter is mandatory and is not conditioned on whether the parents have already been put on notice of the nature of their child's absences. The very purpose of such a letter from the school is to insure that the parents are put on notice of the alleged multiple unexcused absences directly from the school, regardless of whether the parents might also be put on some other kind of notice from another source.
It is not difficult to conceive of a situation where a number of parties within the school system may all assume that the parents have been notified, with the result being that no one directly notifies the parents. That is especially likely where the school district may be lax or inconsistent in implementing its own policies, as appears to be the case with United Local Schools. They failed to send a three-day letter to the parents or request a five-day conference. They failed to notify Appellants immediately when their home schooling application was denied. They failed to notify Appellant of the reasons for the denial or that they could appeal, as required by Ohio Adm. Code 3301-34-03(C)(2). They also gave Appellants the impression that their home schooling application would be automatically approved upon the delivery of certain documents, and then proceeded to deny the application.
Appellee essentially argues that the school was able to waive the three-day notice provision in its policy manual that was obviously designed to protect parents of children who were repeatedly absent without excuse. "A waiver is a voluntary relinquishment of a known right, with the intent to do so with full knowledge of the facts." N.Olmsted v. Eliza Jennings, Inc. (1993), 91 Ohio App.3d 173, 180. A person who is protected by a provision of the law may avail him or herself of that protection or decide that a greater benefit can be gained by waiving that protection. Powell v. Larimer (1973), 34 Ohio App.2d 9, 15. It is axiomatic, though, that a right may only be waived by the party for whose benefit it was intended. Sanitary Commercial Services, Inc. v. Shank
(1991), 57 Ohio St.3d 178, 181; Butt v. Green (1876), 29 Ohio St. 667,670.
The testimony of Ms. Rinto established that the school periodically chose to waive its requirement that parents send written excuses immediately after the child returned to school. The fact that the school chose to waive its own rights as described in the Parent/Student Handbook does not give the school authority to waive the rights of others as set forth in the same handbook. Only Appellants could have waived their right to a three-day notification letter or a five-day informal conference. There is no evidence that Appellants waived these rights. The school itself created its absentee policy and relied upon it at trial and in this appeal. We are bound to uphold both the policies enacted by the school as well as to hold the school accountable under its own policies. Appellee failed to produce sufficient evidence that Appellants' daughter was absent without excuse for more than two days, as defined by school policy. Therefore, the state failed to establish an essential element of its case, namely, that the minor child was habitually truant.
For the foregoing reasons, the judgment of the trial court is reversed as to both Appellants and they are hereby discharged.
 ____________________ WAITE, J.
Vukovich, J., concurs.
Donofrio, J., concurs.