308

Bd. of Education of the Martins Ferry City School District *v.* Ohio Education Association et al.

[Cite as Bd. of Education v. Ohio Education Association, 13 Ohio Misc. 308.]

(No. 23841—Decided November 30, 1967.)

Court of Common Pleas of Belmont County.

*Mr. Thomas J. Jones,* for plaintiff.
*Mr. Robert L. Drury* and *Mr. Hyman Stern,* for defendant.

MATZ, J. On November 2, 1967, the Board of Education of the Martins Ferry City School District filed an action against the Ohio Education Association, the Martins Ferry Classroom Teachers Association and several teachers, some of whom were sued individually and as officers of the Martins Ferry Classroom Teachers Association.

The petition alleges that the individual defendants have continuing teaching contracts with the plaintiff and have been engaged in the teaching of students in the Martins Ferry City School District. It is further alleged:

"that on or about the first day of May, 1967, and at various dates subsequent thereto, the remaining individual defendants have executed teaching contracts with the plaintiff and have been engaged in the teaching of the students of said school district during the 1967-68 school sessions; that on the 25th day of October, 1967, and continuing to the present time, all of the individual defendants, without the approval of the plaintiff, unlawfully failed to report for duty, absented themselves from their positions, and abstained from full, faithful, and proper performance of their positions for the purpose of inducing, influencing or coercing a change in the conditions, as compensation, rights, privileges, or obligations of employment; that said conduct is in violation of Sections 4117.01 to 4117.05, Revised Code;"

It is further alleged:

"That beginning on the 25th day of October, 1967, and continuing to the present date, said individual defendants have failed, refused and neglected to perform the terms and conditions of their contracts with the plaintiff; that they have failed, during said period, to teach in the public schools of the Martins Ferry City School District and have failed to abide by the rules and regulations adopted by the plaintiff for the government of the schools of said district;"

It is then further alleged:

"that the president and certain members of the defendant MFCTA, by radio, television, newspapers and personal telephone calls, have further interfered with the

operation of said school district by the plaintiff in that they have urged the students not to attend school and have urged the parents of said students not to permit the students to attend school on the threat that they might be injured;

"That by their unauthorized work stoppage, the defendants have attempted to force, coerce and control the adoption of a salary schedule contrary to the salary schedule adopted by plaintiff; that they have attempted to coerce the re-employment of Boyd Engle and Jack Boston as principals of two of the elementary schools in said school district; that they have attempted to coerce the board into recognizing the MFCTA as the collective bargaining agency for the teachers of the Martins Ferry City School District; that said individual defendants were prompted, induced, aided and abetted in these efforts by the defendant OEA and the defendant MFCTA;"

On this petition, which is properly verified, the court granted a temporary restraining order as follows:

"1. From unlawfully interfering with and obstructing the plaintiff or any and all of its agents, employees and representatives in the discharge of their duties in the operation of the Martins Ferry City School District.

"2. From unlawfully failing, refusing and neglecting by the individual defendants to perform the terms and provisions of their respective contracts with the plaintiff, and from violating Sections 4117.01 to 4117.05, Revised Code.

"3. From unlawfully interfering with and obstructing the plaintiff in the discharge of its governmental function of operating the public school system of the Martins Ferry City School District in any manner whatsoever, and from attempting to boycott and picket the said Martins Ferry City School District and its Board of Education.

"4. From doing any act calculated to cause any employee of plaintiff to cease his or her employment, or to fail to perform the terms and conditions of his or her contract.

"5. From making any statements either orally or written, or by taking part in or inciting demonstrations or taking any other action calculated to induce or persuade,

coerce or intimidate the plaintiff and its employes, and others, from performing their duties or carrying on their business with or for the plaintiff in the usual and customary manner.

"6. From suggesting, directing, inciting, abetting or aiding any person or persons in committing or causing any person or persons to commit any of the acts aforesaid."

Hearing for preliminary injunction was set for November 13, 1967, and was continued to November 16, 1967. In the meantime, the defendants filed a motion to dismiss the temporary restraining order, and both matters were heard on November 16, 1967.

Several grounds are set forth in the motion to dismiss. The first ground is that the plaintiff, "the Board of Education of the Martins Ferry School District, filed its action * * * without a legal meeting of the Board of Education * * * authorizing suit to be filed." The only authority that could have raised this question would be the Board of Education or possibly some taxpayer. The court knows of no rule of law or any cases which hold that the opposite party could question the authority of an attorney to bring suit on behalf of his client; and in the opinion of the court, that branch of the motion is without merit.

The court construes the second and third branches of the motion as being an allegation that the facts stated in the petition are not sufficient to authorize the granting of a temporary restraining order, and these allegations form the real issue in this case.

The fourth, fifth and sixth branches raise a constitutional question that the restraining order violates the free speech Amendments to the United States Constitution and the Constitution of the state of Ohio.

It appears from the evidence that, by resolution duly adopted, the school board withheld payment of an increase in salary which had been recently granted and placed it in escrow pending a decision from the Attorney General of Ohio as to whether the board could legally pay this increased salary without incurring personal liability.

The teachers had gone out on strike during the Spring

of last year which brought into play the provisions of the so-called Ferguson Act, Sections 4117.01 to 4117.05, inclusive, Revised Code.

Section 4117.02, Revised Code, provides as follows:

"No public employee shall strike.

"No person exercising any authority, supervision, or direction over any public employee shall have the power to authorize, approve, or consent to a strike by one or more public employees, and such person shall not authorize, approve, or consent to such strike."

Section 4117.04, Revised Code, defines a "strike" within the meaning of the act as follows:

"Any public employee who, without the approval of his superior, unlawfully fails to report for duty, absents himself from his position, or abstains in whole or in part from full, faithful, and proper performance of his position for the purpose of inducing, influencing, or coercing a change in the conditions, as compensation, rights, privileges, or obligations of employment or of intimidating, coercing, or unlawfully influencing others from remaining in or from assuming such public employment is on strike, provided that notice that he is on strike shall be sent to such employee by his superior by mail addressed to his residence as set forth in his employment record. Such employee, upon request, shall be entitled to establish that he did not violate Sections 4117.01 to 4117.05, inclusive, Revised Code. Such request must be filed in writing, with the officer or body having power to remove such employee within ten days after regular compensation of such employee has ceased. In the event of such request such officer or body shall within ten days commence a proceeding for the determination of whether such sections have been violated by such public employee, in accordance with the law and regulations appropriate to a proceeding to remove such public employee. Such proceedings shall be undertaken without unnecessary delay."

The first strike was settled on May 4, 1967, and an agreement was entered into between the Board of Education and the Classroom Teachers Association which at-

tempted to prevent the imposition of the penalty provided for in the above-quoted section. However, in the opinion of the court, counsel for the Board of Education was justified, before advising the school board to pay the increased salary, to obtain an opinion from the Attorney General with respect thereto in order to protect the members of the board from personal liability if it should later be determined that, under the above act, payment of the increase in salary would be illegal.

It goes without saying that a school board is a public body and an arm of the state. It can neither contract away its duties nor delegate them to other people.

The following cases hold that a public body could not legally enter into collective bargaining agreements with public employees: *Cleveland* v. *Division 268*, 84 Ohio App. 43; *Hagerman* v. *City of Dayton*, 147 Ohio St. 313; *Mugford* v. *City Council*, 44 A. 2d 745; *City of Springfield* v. *Clouse*, 206 S. W. 2d 539.

On the other hand, the following cases take the opposite view: *Norwalk Teachers Assn.* v. *Bd. of Education*, 138 Conn. 269, 83 A. 2d 482; *Christie* v. *Port of Olympia*, Supreme Court of Washington, 179 Pac. 2d 294.

However, in the *Norwalk Teachers Association case, supra,* it is held as stated in the 5th headnote as follows:

"Teachers' association, a voluntary association of public school teachers and an independent labor union could not engage in concerted action such as a strike, work stoppage, or collective refusal to enter upon teaching duties."

The specific issue in this case, however, is the right of the teachers of the Martins Ferry City School District to strike. Before the adoption of the so-called Ferguson Act, it had been universally held by the Ohio courts that public employees do not have the right to strike.

The very well reasoned opinion of Judge Artl, in the *City of Cleveland* v. *Division 268*, Common Pleas Court of Cuyahoga County, 57 Ohio Law Abs. 173, expresses:

"This section of the General Code that I just read is merely expressive of the common law. The Legislature of

Ohio, like the United States Congress and legislatures of many other states * * * has enacted legislation spelling out the common law as it is and has been known. And why? I think it is clear that in our system of government, the government is a servant of all of the people. And a strike against the public, a strike of public employees, has been denominated in the decisions cited above, as a rebellion against government. The right to strike, if accorded to public employees, I say, is one means of destroying government. And if they destroy government, we have anarchy, we have chaos.''

''I must point out also, the power of the court to enjoin an unlawful act does not stem alone from the so-called Ferguson Act. There is an inherent right in the Court of Equity at all times to enjoin any wrong-doing where there is no adequate remedy at law.''

There is a long annotation on the various phases of the subject in 31 A. L. R. 2d, commencing on page 1145 and the following quotation is taken from page 1159:

''Although there have been many strikes by public employees, very few of them have reached the courts, or at least, very few have been reported. Usually, temporary restraining orders are granted by the courts, the strikers' demands are met and the strike settled. However, in every case that has been reported, the right of public employees to strike is emphatically denied. In this connection, attention is called to the statutes forbidding strikes by public employees, * * *''

Public executive officials have long taken positions that there is no right of public employees to strike. In 1919, Calvin Coolidge, then Governor of the state of Massachusetts, at the time of the celebrated strike of policemen in Boston, issued a statement that ''there is no right to strike against the public safety of anybody, anywhere, at any time.'' President Wilson characterized that strike as ''an intolerable crime against civilization.'' In 1937, President Franklin D. Roosevelt, who was a great champion of organized labor, stated in a letter to the National Federation of Federal Employees:

"All government employees should realize that the process of collective bargaining, as usually understood, cannot be transplanted into public service * * * Administrative officials and employees are governed and guided, and in many instances restricted, by laws which establish policies, procedures, or rules in personal matters.

"Particularly, I want to emphasize my conviction that militant tactics have no place in the functions of any organization of government employees. Upon employees in the Federal service rests the obligation to serve the whole people, whose interests and welfare require orderliness and continuity in the conduct of government activities. This obligation is paramount. Since their own services have to do with the functioning of the government, a strike of public employees manifests nothing less than an intent on their part to prevent or obstruct the operations of government until their demands are satisfied. Such action, looking toward the paralysis of government by those who have sworn to support it is unthinkable and intolerable."

The defendants also claim that the injunction violates the right of Free Speech and Assemblage guaranteed by the amendments to the Federal Constitution and the Constitution of the state of Ohio.

"The right of freedom of speech and of the press is not an absolute or unqualified right. It is not license to speak, publish, or distribute where, when, and how one chooses. First of all, the right does not carry immunity for its abuse. It is subject to reasonable restriction in the exercise of the police power and is limited by the equal rights of others.

"The right of free speech is predicated on the lawful exercise of such right. Truth, good motives, and publication for justifiable ends are bound up with the definition of freedom of the press, and liberty of press does not extend to the privilege of publishing and disseminating baneful and harmful matter, or of inciting the people to violate laws." (10 Ohio Jurisprudence 2d 541, Section 468.)

"Like other aspects of free speech the right to picket is not unlimited. If peaceful picketing lacks some rational

connection with the dispute, or if the object or manner of picketing is unlawful, its prohibition or restraint, depending upon the necessities of the situation, does not constitute an unconstitutional infringement of the freedom of speech or of the press. Thus, there is no violation of constitutional rights in the restraint of picketing employed solely to induce a breach of contract or to aid or bring about a secondary boycott. Picketing accompanied by false statements or misrepresentation is not protected by the constitutional guaranty of freedom of speech. Picketing carried on with force, violence, and intimidation may be enjoined notwithstanding the freedom of speech guaranty. Moreover, the constitutional right to peacefully picket may be forfeited, and all picketing restrained, by resort to such violence as would excite fear that violence would be resumed and thereby give to picketing a coercive quality beyond its legitimate persuasive force." (10 Ohio Jurisprudence 2d 546, Section 474.)

Under the evidence before the court, the defendant teachers were plainly on strike and had absented themselves by concerted action from their positions as teachers in the Martins Ferry schools in violation of their contracts with the school board. The officers of the Ohio Education Association and their representatives, under the evidence produced, were present at most of the meetings of the Classroom Teachers Association and were likewise present and participated in the strike and proceedings which preceded it last Spring. In fact, at a conference of the attorneys with the court which was held in chambers a few days prior to the present strike, representatives of the Ohio Education Association asked the court for the right to participate or, at least, sit in on said conferences.

The motion to dismiss the temporary restraining order will be overruled and the temporary restraining order, issued on November 2, 1967, will be continued. However, the second paragraph of that restraining order is probably a little too broad and will be modified to read as follows;

"2. From unlawfully failing, refusing and neglecting by the individual defendants acting in concert to perform the terms and provisions of their respective contracts with the plaintiff, and from violating Sections 4117.01 to 4117.-05, Revised Code."

The entry:

Motion of the defendants to dismiss the temporary restraining order granted November 2, 1967, is overruled. Temporary restraining order issued November 2, 1967, is modified and as modified is continued.