FOLTZ, APPELLEE, *v.* CITY OF DAYTON ET AL., APPELLANTS.

[Cite as Foltz v. Dayton (1970), 27 Ohio App. 2d 35.]

(No. 3570—Decided August 27, 1970.)

Messrs. *Lucas, Prendergast, Albright, Gibson, Brown & Newman,* for appellee.

Mr. *H. Donald Hawkins,* assistant city attorney, for appellant city of Dayton.

Messrs. *Knee & Snyder,* for appellant Dayton Public Service Union and all individual appellants.

SHERER, J.   This appeal is on questions of law from an order of the Common Pleas Court of Montgomery County, permanently enjoining the city of Dayton, a charter city, from effectuating a union security agreement entered into by the city with Dayton Public Service Union, local 101, hereinafter referred to as D.P.S.U., and permanently enjoining such union, its officers, representatives, and members from taking any action for the purpose of inducing the city of Dayton to comply with such agreement and from intimidating, coercing or threatening employees of the city of Dayton with disciplinary action for failure to sign an agency shop or union dues authorization.

Defendant city of Dayton and defendant D.P.S.U., entered into an agreement concerning wages, hours, and working conditions of the employees of the city of Dayton who are in the classified civil service. A portion of the agreement provided for an agency shop. The essence of such provision is that all employees of the city of Dayton, within the bargaining unit, not paying dues directly to the union or authorizing the city to check off dues *must pay* a service fee to the union equivalent to the union dues. Failure to do so results in an employee's suspension for a minimum of one day for each month the employee fails to pay such dues or service fee. The discipline provided can include discharge.

The union, on June 16, 1969, forwarded to the city of Dayton a list of 96 city employees, not members of the union, who had failed to pay the service fee provided for in the agreement. Plaintiff's exhibit "C" contains this statement:

"These recalcitrant employees now become subject to the penalty provided in the agreement."

Article IV, paragraph 3, of the agreement, provides that:

"Upon written notice from the Union, the City shall discipline an employee covered herein for failure to pay such contract administration charge up to and including discharge, but in no event less than a suspension of one day for each month the employee fails to make such payment."

After the execution of the agreement, the Civil Service Board of the city of Dayton, acting under authority granted to it by section 96 of the charter of the city of Dayton, amended section 2 (O) of rule 18. Rule 18 sets forth a number of grounds for which charges may be brought against an employee for disciplinary action. Section 2 (O) of rule 18 originally provided, as follows:

"Has failed to pay or make reasonable provision for future payment of his just debts due or owing by him, causing thereby annoyance to his superior officer or scandal to the service."

Section 2 (O) was then amended by the Civil Service Board to read as follows:

"Has failed to pay or make reasonable provision for future payment of his just debts due or owing by him or has failed to pay a monthly service charge to a labor organization as may be required by an agreement between the city and such labor organization, causing thereby annoyance to his superior officer or scandal to the service."

The plaintiff, Walter Foltz, appellee herein, brought this action as an individual, as a taxpayer of the city of Dayton, and as a representative of a class of persons similarly situated.

He alleges that he is a taxpayer of the city of Dayton; that he is holding a position in the classified service of the city of Dayton as painter 1; that he is not a member of the union; that he has refused to authorize the city of Dayton to check off union dues or the service charge provided in the contract; that unless restrained, the city and the union will unlawfully discipline and discharge him and others similarly situated; and that he and they will thereby suffer irreparable injuries for which they have no adequate remedy at law.

Plaintiff alleges that civil service employees of the city of Dayton are governed by Chapter 143 of the Ohio Revised Code and other civil service laws and that the agreement aforesaid violates Ohio law.

The judgment entry of the Common Pleas Court recites:

"Accordingly, the Court finds that the Union Security Agreement, Article 14 of the Agreement between the Defendant D.P.S.U., Local 101, and the City of Dayton, dated May 13, 1969, is in conflict with the general law of this State and that it does not accomplish a governmental, public or municipal purpose as distinguished from private, and in consequence thereof is ultra vires and invalid."

The court said that the union security agreement was in conflict with R. C. 9.41 which provides that a municipality may check off the wages of its employees for the payment of dues to a labor union only upon written authorization by the employee.

The Common Pleas Court based its conclusions on the holding of the Supreme Court in *Hagerman* v. *Dayton*, 147

Ohio St. 313, 71 N. E. 2d 246, wherein the following paragraphs of the syllabus read:

"5. A municipal ordinance which provides for or authorizes a check-off of the wages or salary of civil service appointees is a police regulation and is in conflict with Section 6346-13, General Code [now R. C. 1321.32]. (Sections 3 and 7 of Article XVIII, Ohio Constitution.)

"6. The appointment, tenure, promotion, removal, transfer, lay-off, suspension, reduction, reinstatement or dismissal and working conditions of persons in the classified civil service of the state, the several counties, cities and city school districts thereof, are regulated exclusively by Section 10 of Article XV of the Ohio Constitution and the laws, rules and regulations enacted in pursuance thereof.

"7. There is no authority for the delegation of any powers or functions of either a municipality or its civil service appointees to any organization of any kind."

In that case, the city of Dayton enacted an ordinance authorizing the Director of Finance to make payroll dues deductions as requested by city employees to be paid to the Dayton Public Service Union. Following the enactment of the ordinance, the Director of Finance of the city of Dayton filed his petition in the Common Pleas Court of Montgomery county asking for a declaratory judgment to determine its legality and validity, and a determination of to what extent, if any, he might lawfully utilize the services of his employees to comply with the provisions of the ordinance.

At page 328 the court said:

"There is no municipal purpose served by the check-off of wages of civil service employees. Counsel for appellees argue that a check-off is a convenience to both the municipal appointee and the labor union. We must be realistic and take judicial notice, of what is generally known, that the check-off is a means of maintaining membership. Indeed, the record in this case shows that each so-called contract member is required to give a cognovit note for twenty months dues in advance and these pro-

posed check-off payments are to be applied on such notes. The check-off is contrary to the spirit and purpose of the civil service laws of the state.''

The court quoted Section 10, Article XV of the Constitution of Ohio, which provides:

''Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision.''

The court then said at pages 328, 329:

''Under this section of the Constitution and the laws enacted pursuant thereto, labor unions have no function which they may discharge in connection with civil service appointees.''

Judge Zimmerman, concurring, quoted from the case of *Fitzgerald* v. *City of Cleveland*, 88 Ohio St. 338, 344, 103 N. E. 512, 514, relative to the powers of local self-government and said that the powers of local self-government ''are clearly such as involve the exercise of the functions of government.''

Judge Zimmerman also quoted from 37 American Jurisprudence 734, Municipal Corporations, Section 120, as follows:

''Generally, a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within the municipal corporation, the sovereign powers of which are used to promote such public purpose. The phrase 'municipal purpose' used in the broader sense is generally accepted as meaning public or governmental purpose as distinguished from private.''

The city and the union contend that the city's action here in adopting rule 18, 2(O) is not a ''local police regulation'' but is a proper exercise of its powers of local self-government conferred upon it by Section 3, Article XVIII of the Ohio Constitution and relies upon the holding of the Supreme Court in the case of *State, ex rel. Canada,* v. *Phillips,* 168 Ohio St. 191, 151 N. E. 2d 722, in which the

court, at page 196, quoted with approval the following language of the court in the earlier case of *State, ex rel. Lentz,* v. *Edwards,* 90 Ohio St. 305:

"It would not be contended that the civil service of a city is not a matter of municipal concern nor that the power of regulating that service is not one of the powers of local self-government. * * *

"The manner of regulating the civil service of a city is peculiarly a matter of municipal concern. One of the powers of local self-government is the power of legislating with reference to the local government within the limitations of the constitutional provisions above referred to. [Section 10, Article XV.] As long as the provisions made in the charter of any municipality with reference to its civil service comply with the requirement of Section 10 of Article XV, and do not conflict with any other provisions of the Constitution, they are valid and under the cases referred to discontinue the general law on the subject as to that municipality. That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective.

"* * * [T]he city of Dayton fully complied with the letter and the spirit of Section 10 of Article XV by providing for appointments and promotions in the civil service of the city according to merit and fitness to be ascertained by competitive examinations."

Section 1 of the charter provides in general terms that the city of Dayton:

"may pass such ordinances as may be expedient for maintaining and promoting the peace, good government and welfare of the City and for the performance of the functions thereof."

It is further provided in such section that:

"The city shall have and may exercise, all other powers which, under the constitution and laws of Ohio, it would be competent for this Charter to enumerate."

The charter makes specific provision for civil service

in sections 93 to 107, inclusive. In section 96, the charter provides that:

"The Board, subject to the approval of the Commission, shall adopt, amend, and enforce a code of rules and regulations, providing for appointment and employment in all positions in the classified service, based on merit, efficiency, character, and industry, which shall have the force and effect of law; shall make investigations concerning the enforcement and effect of this chapter and of the rules adopted. It shall make an annual report to the Commission."

In *Canada*, the question involved was whether section 151, of the charter of the city of Columbus providing that the appointing authority could appoint any one of the three highest on a civil service eligible list was a local police regulation in conflict with R. C. 143.34, providing for the appointment of the one highest on the civil service eligible list or whether it was a proper exercise of the city's powers of local self-government. The court held that the method adopted by a city for making appointments within its civil service is a matter of local self government limited only by the provisions of Section 10, Article XV of the Ohio Constitution, providing for appointments and promotions in the civil service of cities according to merit and fitness to be ascertained by competitive examinations.

In paragraph 8 of the syllabus in *Canada*, the court approved and followed paragraph 2 of the syllabus of *Hile v. City of Cleveland*, 118 Ohio St. 99, 160 N. E. 621, which held:

"Section 96 of the charter of the city of Cleveland, which provides that one seeking a promotion or appointment in the city civil service shall pass a competitive civil service examination 'unless he shall have served with fidelity for at least two years immediately preceding in a similar position under the city,' does not contravene Section 10, Article XV of the Ohio Constitution, but is in full accord therewith, and authorizes promotions and appointments of persons in the civil service of the city

without civil service competitive examination, who have previously so served under the city."

A cogent argument is made in the case before us that the action of the city of Dayton adopting section 2(O) of rule 18 of the civil service rules is a valid exercise of the city's powers of local self government and that it does not conflict with Section 10, Article XV of the Ohio Constitution.

The civil service employees of a city have a right to bargain collectively with the city respecting their wages, hours and conditions of their employment and have a right to designate a union to represent them in such bargaining.

The question here is whether the city's agreement with such a union whereby the city is obligated, upon complaint of the union, to discharge its employees if they fail to pay union dues or to pay a service charge to the union in the amount of such dues is a police regulation in conflict with the provisions of chapter 143 of the Revised Code and R. C. 9.40, or whether it is a valid exercise of its powers of local self government not in conflict with Section 10, Article XV of the Ohio Constitution.

We are unable to distinguish the facts in this case in any significant way from the facts in the *Hagerman* case and we are bound by the Court's conclusion in that case. We conclude, therefore, that the Common Pleas Court did not err in holding that Section 2(O) of rule 18 of the civil service rules of the city of Dayton is a police regulation in conflict with the general laws of Ohio relating to civil service and is invalid.

In *Canada*, the court reviewed its previous holdings involving civil service appointments and promotions in charter cities, overruling some, distinguishing others and approving some, but it did not mention the *Hagerman* case. In *State, ex rel. Lynch,* v. *City of Cleveland,* 164 Ohio St. 437, approved by the court in *Canada,* the court was considering a Cleveland charter provision providing a method of selecting a chief of police other than from a civil service list and said, at *440*:

"Do the Cleveland charter provisions constitute 'regulations' within the meaning of the second part of Section 3 of Article XVIII authorizing municipalities 'to adopt and enforce within their limits such local police * * * regulations, as are not in conflict with general laws?' This court is of the opinion that the term is properly used with reference to rules relating to the operation of a police department but not with reference to the method of selecting an administrative head or chief thereof."

The court then went on to hold that under its powers of local self government the city had the power under its charter to choose its own method of selecting its chief of police other than from a civil service list.

We have examined and considered all errors assigned by defendants and find none well taken.

The judgment of the Common Pleas Court will be affirmed.

*Judgment affirmed.*

CRAWFORD, J., concurs in judgment.

With great reluctance, I concur in the judgment, being constrained to do so by *Hagerman* v. *Dayton* (1947), 147 Ohio St. 313, 34 O. O. 238, 46 Ohio Law Abs. 141, 71 N. E. 2d 246, 170 A.L.R. 199.

Many commentaries cite this case as illustrative of a definitely conservative point of view. Vast changes have occurred and are still occurring in the social, economic and governmental structure which tend to weaken the philosophical basis of that decision. Here the city and the union are alike seeking to give effect to their agreement for an agency shop.

The technical objection to a wage assignment noted in *Hagerman* appears inapplicable. The present plaintiff made no assignment. On the contrary, he resists the deduction. He is apparently content to accept the benefits which the union may accomplish in his behalf, but unwilling to share its costs. Yet, if the union should become

an ineffective bargaining agent for the employees, they, including plaintiff, may withdraw its authority by democratic processes.

Whether, in the light of present trends, without a wage assignment, the city may observe the agency shop agreement by requiring all employees to support the bargaining agent, is a question which now deserves careful review.

It is no longer valid to say that these deductions support only a private, personal and selfish purpose. Satisfactory relations between government and its employees is a matter of the utmost public concern, directly conducive to the general welfare.

"Under some circumstances * * * public administrators may deem collective bargaining the most satisfactory method of handling the government's relations with its employees." 21 U. Cinc. L. Rev. 354.

In all the years since *Hagerman*, apparently only once has the Supreme Court expressly mentioned that decision. See *State, ex rel. Leach*, v. *Price* (1959), 168 Ohio St. 499, at 504.

It is earnestly to be hoped that present day conditions may prompt careful review of the problem.

KERNS, J., concurring in judgment. In my opinion, there is no critical distinction which might remove this case from the application of the law pronounced by the Supreme Court of Ohio in the syllabus of *Hagerman* v. *Dayton* (1947), 147 Ohio St. 313.

There is considerable merit in defendants' argument that time has had a depreciating influence upon the holding in the *Hagerman* case, but under the doctrine of *stare decisis*, any change in existing law must emanate from the Supreme Court of Ohio.