Youngstown Education Association, Appellant, *v.*
Youngstown City Bd. of Education, et al., Appellees.

(No. 72-C. of A. 54—Decided February 27, 1973.)

Appeal: Court of Appeals for Mahoning County.

*Messrs. Green, Schiavoni & Haines,* for appellant.
*Mr. William J. Higgins, Mr. James J. Corbett* and *Mr. Donald DeSalvo,* for appellee Youngstown City Bd. of Education.

*Mr. Thomas P. Lordeon,* for appellee Concerned Parents et al.

JONES, J. This Court has had presented to it for judicial review two separate orders of Judge Elwyn Jenkins of the Court of Common Pleas of Mahoning County. On the one hand, the Youngstown Education Association takes exception to an order favoring the Youngstown City Board of Education and the Superintendent of the Youngstown City School District claimed to be adverse to the Youngstown Education Association. On the other hand, a group of city residents, banded together, calling themselves Concerned Parents, were denied permission to intervene as a party litigant in the controversy existing in the common pleas court between the Youngstown Education Association and the Youngstown City Board of Education and the Superintendent of the Youngstown City School District. The Concerned Parents have appealed that order denying them permission to intervene as a litigant.

The first order of business for this court to pass upon is the issue presented by the Concerned Parents. If the Concerned Parents were adversely affected by the denial to intervene as a party, then, in that event, Judge Jenkins' order to that effect must be reversed. This, then, would also affect Judge Jenkins' decision as to the controversy between the original litigants, namely the school board and superintendent of schools on the one side and the teachers' association on the other side. If the Concerned Parents should have been permitted to intervene, then both orders before this court should be set aside and the matter remanded to Judge Jenkins for a new hearing among the four parties.

To be permitted to intervene, the Concerned Parents must show some basis pursuant to the Ohio Rules of Civil Procedure. Civ. R. 24 sets out two bases for intervention. One is intervention by right, and the other by permission of the court. (In this case, that would have been permission by Judge Jenkins.) There is no question but that the Concerned Parents made a timely application to intervene and that they, through their counsel, followed the procedure set out in Civ. R. 24(C).

As to intervention as of right, there are two bases set out in Civ. R. 24 (A) and they are:

(1) When a statute of this state confers an unconditional right to intervene; or,

(2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

As to condition (1): neither the brief, nor oral argument of counsel for Concerned Parents pointed to a statute of this state which would confer upon the Concerned Parents an unconditional right to intervene. Further, we are unable to find such a statute. As to condition (2): it is the holding of this court that the existing parties, upon the issues joined by the pleadings, adequately protected the interests of the Concerned Parents. A look at the prayer of the complaint tendered by the Concerned Parents does not reveal issues that would be in addition to those already before the common pleas court.

Accordingly, the Concerned Parents have not shown that they may intervene as a matter of right.

Looking now to Civ. R. 24(B) (permissive intervention), the issue thus presented to this court is whether or not Judge Jenkins abused his discretion in not permitting the Concerned Parents to intervene. There are two bases upon which a trial judge may permit intervention of a party at his discretion:

(1) When a statute of this state confers a conditional right to intervene; or

(2) When an applicant's claim or defense and the main action have a question of law or fact in common.

As to (1): We look to R. C. 733.58.1, which permits intervention involving "public interest" or if "justice will be furthered." Again, however, we find that to allow intervention of the Concerned Parents would in no way present new issues and thereby would neither be "in the public interest" nor in "furtherance of justice."

As to (2): Again, this basis to allow intervention is discretionary and we find no abuse of discretion in the court's denial of intervention.

It should further be pointed out that the Concerned Parents are, as are all other citizens of Youngstown, represented in school-teacher community matters by an elected board. This is the result of a representative form of government. They are bound to "live with" their representatives, but, interestingly enough, in this case the Concerned Parents wanted to petition the court for exactly the same things the school board was determined to uphold. Therefore, the order of Judge Jenkins denying the Concerned Parents to intervene is affirmed.

Coming now to the order of Judge Jenkins, properly brought before this court for review, wherein the Youngstown Education Association was denied the relief sought by petition in that Judge Jenkins, by order of June 26, 1972, decided as follows:

"Temporary injunction heretofore issued dissolved. Complaint dismissed."

We are of the opinion that the order should be affirmed and shall proceed to state our reasons for finding not well taken the only error assigned, to-wit:

"The trial court committed error in failing to enjoin the Youngstown School Board from the adoption and implementation of policies which directly conflict with previously negotiated and existing agreements between the Youngstown School Board and the Youngstown Education Association which prescribe the terms and conditions of teachers' employment in the school system and which provide for negotiations over all teachers' working conditions."

Briefly stated the facts are these:

A so-called "Master Agreement" was understood by the Youngstown Education Association and the Youngstown City Board of Education to exist between them. Subsequent thereto, the Board adopted certain policies which were precipitated by much unrest at Hayes Middle School among the teachers, parents, students and others. It is the claim of the Youngstown Education Association that these policies contravened the express language of the Master Agreement in many respects. The policies were related to

management of the schools and the relationship between teachers and students and parents and the Board.

It is the position of the teachers' association that the school board, in so doing, breached conditions of the Master Agreement and, therefore, the board and the superintendent ought to be enjoined from enforcing such regulations.

The school board takes the position that the Master Agreement has no legal effect as collective bargaining is not sanctioned by law. Further, that if they are wrong on this point, legislative enactment specifically enjoins upon them the duty to enact rules and regulations concerning the running of the schools, which includes the responsibility of management and control.

R. C. 3313.20 provides, in part:

"Rules and regulations; employee attendance at professional meetings, expenses.

"The board of education shall make such rules and regulations as are necessary for its government and the government of its employees, pupils of its schools, and all other persons entering upon its school grounds or premises. Rules and regulations regarding entry of persons other than students, staff, and faculty upon school grounds or premises shall be posted conspicuously at or near the entrance to such grounds or premises, or near the perimeter of such grounds or premises if there are no formal entrances, and at the main entrance to each school building. * * *,"

R. C. 3313.47, states:

"Management and control of schools vested in board of education.

"Each city, exempted village, or local board of education shall have the management and control of all of the public schools of whatever name or character in its respective district. If the board has adopted an annual appropriation resolution, it may, by general resolution, authorize the superintendant or other officer to appoint janitors, superintendents of buildings, and such other employees as are provided for in such annual appropriation resolution."

As to the issue of the ability of the Master Agreement to hold up in a court of law (i. e., is it sanctioned by law), the teachers argue that the legislature contemplated collective bargaining and the board says not. Frankly, there are lower courts in Ohio that split on this issue. The Ohio Supreme Court has not addressed itself to the precise issue as far as we are able to determine. Judge Lamnick, of the Court of Common Pleas of Tuscarawas County, Ohio, has held that a sub-division of the state of Ohio may not enter into a contract with a union or an association. In other words, he says "no" to collective bargaining under conditions that are similar to those of the case at bar. (*Ohio Civil Service Employees Assn.* v. *Div. 11 of Ohio Dept. of Highways*, 28 Ohio Misc. 153, 57 Ohio Op. 2d 83.) Just the opposite result was reached by our colleagues of the Second District Court of Appeals for Ohio in the case of *Foltz* v. *Dayton*, 27 Ohio App. 2d 35, 42, wherein Judge Sherer stated:

"The civil service employees of a city have a right to bargain collectively with the city respecting their wages, hours and conditions of their employment and have a right to designate a union to represent them in such bargaining."

Judge Jenkins did not pass upon the issue of the right of collective bargaining. He was correct in this regard. We need not pass on that issue for the reason that Master Agreement or no Master Agreement the Youngstown City Board of Education is charged by statute to manage and control the schools. The policies adopted by them were in response to that obligation. The Board cannot back away from or delegate this responsibility. As stated in paragraph 7 of the syllabus in *Hagerman* v. *Dayton*, 147 Ohio St. 313:

"There is no authority for the delegation of any powers or functions of * * * a municipality."

Further, in another case, it was said

"It goes without saying that a school board is a public body and an arm of the state. It can neither contract away its duties nor delegate them to other people." *Bd. of Education* v. *Ohio Education Assn.*, 13 Ohio Misc. 308, at 313.

This is fundamentally good law and must be respect-

ed. In *Hagerman, supra,* the Ohio Supreme Court held unconstitutional an ordinance of the city of Dayton providing for the check-off of union dues.

Judge Jenkins, following a hearing, determined that the Youngstown City Board of Education did not abuse its discretion in enacting the objected to policies. He was guided in this respect by the same law that guides this court. Neither Judge Jenkins nor this court is permitted to substitute his or its judgment for that of the members of the Board. We do not test the wisdom of the rules and regulations as long as they have been legally adopted and are not an abuse of discretion. In support of these propositions we cite the following:

"In the exercise of the statutory powers granted by R. C. 3313.47 and R. C. 3313.20 boards of education have a wide area of discretion with which the courts will not interfere in the absence of a showing of an abuse of discretion." (*State, ex rel. Idle,* v. *Chamberlain,* 39 Ohio Op. 2d 262, headnote 1.)

"No court has authority to control the discretion vested in a board of education, in the absence of a gross abuse thereof, or the right to substitute its judgment for that of such a board upon any question the board is authorized by law to determine." (Headnote 1.)

"Under the law of Ohio, the * * * Board of Education is given the power and authority, and has the duty, to make rules and regulations as are necessary for the government of its employees and pupils of the schools." (*State, ex rel. Evans,* v. *Fry,* 40 Ohio Op. 2d 508, 509.)

It is not a question as to whether or not Judge Jenkins, or members of this Court, personally approve of the Board's policies or whether we would have done differently as board members, but the question for us to determine is: Were the Board's proceedings legal and, if so, were the Board's policies, as adopted, an abuse of its discretion? We hold yes to the former and no to the latter. Accordingly, both orders before this Court for review are affirmed.

*Judgment affirmed.*

DONOFRIO, and LYNCH, JJ., concur.

42

LYNCH, P. J., concurring. I concur in Judge Jones' opinion, but wish to elaborate on the question of whether a board of education can enter into a collective bargaining agreement with an association of school teachers.

It is the established law in Ohio that in the absence of any specific grant of power by the constitution or laws of the state or charter of the municipality, a municipality or any subdivision thereof is without authority to enter into a binding collective bargaining agreement with any union or organization of employees. *Hagerman* v. *Dayton,* 147 Ohio St. 313; *Cleveland* v. *Division 268,* 51 Ohio Law Abs. 498, 30 Ohio Op. 395, and 41 Ohio Op. 236, 57 Ohio Law Abs. 173; 33 Ohio Jurisprudence 2d 146, Labor, Section 33.

In 1959, the legislature enacted R. C. 9.41, which provides in part as follows:

"* * * the state of Ohio and any of its political subdivisions or instrumentalities may checkoff on the wages of public employees for the payment of dues to a labor organization or other organization of public employees upon written authorization by the public employee. Such authorization may be revocable by written notice upon the will of the employee."

In *Foltz* v. *Dayton,* 27 Ohio App. 2d 35 at page 42, the court stated as follows:

"The civil service employees of a city have a right to bargain collectively with the city respecting their wages, hours and conditions of their employment and have a right to designate a union to represent them in such bargaining."

See *Bd. of Education* v. *Ohio Education Association,* 13 Ohio Misc. 308.

However, the Common Pleas Court of Tuscarawas County in *Ohio Civil Service Employees Assn.* v. *Division 11 Dept. of Highways,* 28 Ohio Misc. 153, held that the Director of the Ohio Department of Highways may recognize a labor union or a State Civil Service Employees Association for the purpose of the checkoff of dues to such union or organization as authorized by R. C. 9.41, but that such Director may not negotiate or enter into a contract

with a labor union or a state Civil Service Association regarding wages, hours, working conditions or other conditions of employment of classified employees of the Ohio Department of Highways.

Thus, there is a division of opinion as to whether R. C. 9.41 provides legislative authority to the state of Ohio and any of its political subdivisions to enter into collective bargaining agreements with any union or organization of employees.

We hold that R. C. 9.41 authorizes a board of education to enter into a binding collective bargaining agreement with an association of school teachers, but that such collective bargaining agreement is limited by applicable statutes.

On the affirmative side, R. C. 3313.17 authorizes a board of education to enter into contracts, and it is generally recognized that a board of education can enter into a contract of employment with an individual teacher. We hold that a board of education can enter into a collective bargaining agreement with an association of school teachers to the same extent that such board of education can enter into a contract of employment with an individual teacher.

However, no collective bargaining agreement between a board of education and an association of school teachers can compromise the authority of a board of education given by R. C. 3313.20 and 3313.47. Since the provisions of the agreement between the Youngstown City Board of Education and the Youngstown Education Association at issue in this case are in conflict with either R. C. 3313.20 or R. C. 3313.47 according to the interpretation given such provisions by the Youngstown Education Association, such provisions are invalid to the extent that they conflict with such statutes.

If the Youngstown Board of Education had the power to contract with the Youngstown Education Association as to regulations concerning either pupils or parents we feel that Concerned Parents would have such an interest in this controversy as to warrant their being permitted to

44

become a party to this lawsuit. However, since the issue is whether the Youngstown Board of Education had the power to enter into such a contract with the Youngstown Education Association and the Youngstown Board of Education successfully took the same position as the Concerned Parents on this issue, we agree with the trial court that no useful purpose would be gained by permitting Concerned Parents to be a party to this lawsuit and that, on the other hand, the allowance of Concerned Parents to become a party to this lawsuit would have complicated an already difficult case. Since Concerned Parents did not present any new questions pertinent to this case, its contribution to this case was as effective by filing briefs amicus curiae as it would have been by intervention.

DONOFRIO, J., concurs in the foregoing concurring opinion.

JONES, J., of the Eleventh Appellate District, sitting by designation in the Seventh Appellate District.