NORTH ROYALTON EDUCATION ASSN. ET AL., APPELLANTS, *v.* NORTH ROYALTON BD. OF EDUCATION, APPELLEE.

(No. 32791—Decided September 12, 1974.)

*Mr. Gerald A. Messerman*, for appellants.
*Mr. Robert C. Maynard*, for appellee.

DAY, J. Initially, North Royalton Education Association, *et al.* (appellants), filed a suit for an order compelling the North Royalton Board of Education (appellee) to arbitrate a grievance pursuant to the terms of a collective bargaining agreement. Appellee moved to dismiss the complaint and appellants amended the original pleading to add a cause of action for declaratory judgment.

Appellee's motion was granted in the court below on December 27, 1972. Appellants applied for reconsideration on January 8, 1973. Reconsideration was denied on May 4, 1973, accompanied by the trial court's findings of fact and conclusions of law. Appellants filed notice of appeal on May 31, 1973, assigning three errors:

"First Assignment of Error:

"THE TRIAL COURT ERRONEOUSLY CONCLUDED THAT A BOARD OF EDUCATION IS BARRED FROM ENTERING INTO A COLLECTIVE BARGAINING CONTRACT WITH A VOLUNTARY ASSOCIATION OF CERTIFICATED TEACHERS.

"A. The Power to Enter Into Collective Bargaining Agreements is Necessarily Implied in Those Powers Expressly Conferred Upon Boards of Education By Statute.

"B. There is No Legal Barrier in the State of Ohio Preventing Boards of Education From Engaging in Collective Bargaining and From Entering into Collective Bargaining Agreements with Voluntary Teachers Associations.

"Second Assignment of Error:

"THE TRIAL COURT ERRED IN REFUSING TO ENFORCE THE COLLECTIVE BARGAINING AGREEMENT BETWEEN THE BOARD AND THE ASSOCIATION DESPITE THE FACT THAT THE AGREEMENT HAD BEEN INCORPORATED IN THE CONTRACTS OF EACH INDIVIDUAL MEMBER OF THE ASSOCIATION.

"Third Assignment of Error:

"THE TRIAL COURT ERRED IN CONCLUDING THAT A CONTRACT PROVISION IN AN AGREEMENT BETWEEN A BOARD OF EDUCATION AND A TEACHERS ASSOCIATION AUTHORIZING SUBMISSION OF GRIEVANCES TO FINAL AND BINDING ARBITRATION WAS VOID AS AN UNLAWFUL DELEGATION OF THE BOARD'S AUTHORITY."

We reverse.

## I.

There is a threshold procedural issue raised by appellee's motion to dismiss made after the argument on the merits in this court and after *Kauder* v. *Kauder* (1974), 38 Ohio St. 2d 265, was decided by the Supreme Court of Ohio. That case establishes the principle that a motion for reconsideration is not the equivalent of a motion for new trial [Civ. R. 59] or a motion for judgment notwithstanding the verdict [Civ. R. 50(B)] and does not, therefore, toll the thirty-day requirement for filing a notice of appeal after entry of an appealable judgment or order in the trial court [App. R. 4(A)].

We are bound, of course, by the rules and by *Kauder*. However, we do not read either the rules or *Kauder* as requiring the elevation of form over substance. Consequently, it is necessary to examine appellants' post-trial motion to determine whether its substance requires that it be treated as a motion for reconsideration or as a motion for new trial. If the substance of appellants' motion establishes its nature to be that of a motion for reconsideration, the appeal is clearly out of rule. If the substance of the motion establishes its essence to be a request for a new trial, the substantive issues remain for disposition.

In our view appellants' "Application for Reconsideration" must be treated as a motion for new trial under Civ. R. 59(7). The whole tenor of the application's parts (1) and (3) suggests, when not explicit, that the trial court *erred as a matter of law* when it apparently agreed that

the action to compel arbitration was premature in the light of appellee's willingness to participate in an adversary arbitration. The absence of prematurity seems especially clear because of a letter from appellee to the American Arbitration Association (see appellants' Motion for Reconsideration, Exhibit A) indicating that appellants' request for arbitration should be dismissed following the ruling of the trial court sustaining appellee's position. This pattern of facts rebuts willingness and supports the claimed error of law. Therefore, the appellee's motion to dismiss is overruled and we reach the substantive issues.

## II.

The operative facts are clear.

The appellant is a voluntary association which represents a majority of the certificated teachers in the North Royalton City School District (FF1).[1] Appellee is the school board for the district responsible by law for the management and control of the district's affairs (FF4: Ohio Rev. Code 3313.20). Individual appellants are certificated teachers, officers of the association, employed by the district under individual contracts (FF2). The board and the association executed a contract in July of 1971 (FF5) which was adopted as board policy, effective September 1, 1971 (FF2), and by virtue of an "understanding" signed by the board and association, prior to July 1, 1971, the contract was to become part of the individual contract of each teacher employed in the district (FF8). The contract contained a grievance procedure[2] including a final step providing for final and binding arbitration.

---

[1] "FF" refers to the findings of fact of the trial court. "FF" followed by a number indicates reference to the particular finding of fact identified by the number.

[2] "A 'grievance' shall mean a complaint by a teacher or an association (a) that there has been a violation of inequitable application of one or more of the provisions of a contract, or (b) that the teacher or the association has been treated inequitably by an act or condition contrary to established school board policy or practice governing or affecting employees, except that the term 'grievance' shall not apply to any matter in which the school board is without authority to act." *North Royalton City Schools Professional Grievance Procedure*, eff. 9/1/71.

During the 1971-1972 school year a dispute arose over the interpretation of the contract. That dispute involved the formula for application of state funds during the 1972-1973 school year (FF9). The appellants took the position that the dispute was subject to the grievance procedure's arbitration clause. The appellee refused arbitration contending the entire contract is unenforceable (FF10). Appellants brought suit.[3]

### III.

All the assigned errors turn on the question whether the contract is valid and enforceable. In lower terms that issue poses two fundamental questions—whether the appellee school board has the authority to negotiate and enter into a collective bargaining agreement with its employees and, if it has, whether that authority includes the power to agree to the final and binding arbitration of grievances.

No decision by the Supreme Court of Ohio has been found nor brought to our attention which decides these precise issues. However, it is clear that school boards, as agencies of the state for the "organization, administration and control of the public school system of the state," *Cline* v. *Martin* (1916), 94 Ohio St. 420, 426, are authorized to exercise the powers expressly given by statute, *Schwing* v. *McClure* (1929), 120 Ohio St. 335, 340-341. It has been held in Ohio that such powers include the right to negotiate a collective bargaining agreement with an association of teachers, *Dayton Classroom Teachers Association* v. *Dayton Board of Education, et al.* (1973), p. 7 of the unreported opinion;[4] cf. *Foltz* v. *Dayton* (1970), 27 Ohio App. 2d 35, 42, but it has been held also that a provision for compulsory arbitration is an invalid and unenforceable delegation of power and violates the duty "to make, declare and interpret policy and administer the school system." *Dayton Class-*

---

[3]Appellee, the North Royalton Board of Education, may sue and be sued. Ohio Rev. Code §3313.17.

[4]The *Dayton* case relies on the second and third syllabi in *Youngstown Education Assn.* v. *Bd. of Education* (1973), 36 Ohio App. 2d 35, which support its position. However, those syllabi are not reflected or discussed in the text even if the syllabus were the law in an appellate case in Ohio. It is not. *Parkview Hospital* v. *The Hospital Service Assn.* (1966), 8 Ohio App. 2d 315.

room Teachers Association v. Dayton Board of Education, id. The case of Goldman v. Bd. of Edn. (1965), 5 Ohio App. 2d 49, 51, takes a different view of arbitration upholding an award to which a school board was party but not involving the interpretation of a collective bargaining agreement. We are persuaded by Goldman and see no reason for treating differently a school board's authority to agree to abide by an arbitration clause in a labor relations contract. We decline to do so.

Sections IV-VII set out our reasons for upholding the right and power of a school board to conclude a collective bargaining agreement and to agree to final and binding arbitration for the interpretation and applications of contract terms only within limits imposed by law.

## IV.

If appellee were a private corporation rather than a political subdivision of the State of Ohio, there would be no question of its right, perhaps even its duty, to bargain with the majority representative of its employees.[5] In medieval England there were occasions when statutes forbade employees from taking or demanding wages in excess of statutory limits and punished masters for enticing away the employees of others or retaining any employee who had broken his contract of service with another. See Landis, Cases on Labor Law, Historical Introduction, pp. 2-6, Foundation Press, Chicago, 1934. However, for many decades now employers and employees in most, if not all, jurisdictions in the English speaking world have been free to bargain collectively.[6] On the other hand, this right in

---

[5]The National Labor Relations Act, as amended, requires non-exempt employers whose operations affect commerce to bargain collectively with the majority representative of its employees, 29 U. S. C. §158(a)(5), but "any State or political subdivision thereof" is not within the statutory definition of "employer," 29 U. S. C. §152(2), and is, therefore, exempt even though otherwise covered under the commerce test. We essay no judgment on the effect appellee's operations have on interstate commerce because a school board is an exempt political subdivision.

[6]The flavor of the older attitude is found in a statement from the case of the Philadelphia Cordwainers (1806), 3 Commons & Andrews,

most private employers did not merge with a *duty* in United States law until the advent of the National Labor Relations Act of 1935[7] and a broadened interpretation of "commerce" by the Supreme Court of the United States. *Cf. National Labor Relations Board* v. *Jones & Laughlin Steel Corp.* (1937), 301 U. S. 1, 38-42, 81 L. Ed. 893, 912-914.

The exempt status of the present appellee (see fn. 5) leaves freedom to bargain, or not, untrammelled by federal legislation and no Ohio statute specifically prohibits, allows, or compels it. Thus, the appellee has no duty to bargain collectively to establish terms and conditions for its employees but this does not foreclose the questions whether it *may* bargain and what its responsibilities are if it *does* negotiate a collective bargaining agreement.

## V.

It has been argued variously that strict construction of local governmental powers (absent home rule) and the separation of powers doctrine requires specific legislation to establish the power of local governmental units, such as school boards, to bargain collectively. It is also said that an existing civil service or merit system so occupies the employee relations field that specific enactments are necessary to legalize collective bargaining.[8] Still another objection rests on the premise that public officials should not be able to bind their successors.[9]

The first two objections are easily met. There is noth-

---

Doc. Hist. of Am. Ind. Soc. 59, 233 (1910), on the question of combinations of workmen:

"A combination of workmen to raise their wages may be considered in a two fold point of view: one is to benefit themselves . . . the other is to injure those who do not join their society. The rule of law condemns both."

[7] 29 U. S. C. §151. Later amendments extended the duty to bargain to employee representatives, 29 U. S. C. §158(B)(3). Not all industry in interstate commerce is governed by this statute and its amendments. See, *p. e.,* The National Railway Labor Act of 1926, 44 Stat. 577; 45 U. S. C. 151.

[8] See Dole, R., Jr.—*State and Local Public Employee Collective Bargaining in the Absence of Explicit Legislative Authorization,* 54 Iowa L. Rev. 539, 544-546 (1969).

[9] *Id.,* at 548.

ing about either strict construction or the separation of powers, assuming the power to contract at all, which requires that the power be exercised in a particular way. And, while a collective agreement could not overturn or modify either a statutory civil service standard or a valid regulatory scheme under such a statute, collective bargains can anticipate and take account of existing law so as not to conflict with it.

The proposition that one public official should not be able to bind a successor founders on the lack of a clear comprehension of the capacity in which a public official operates. He performs not for himself or for his successors. His principal is the public and when he acts for it he can bind it to contracts beyond his term in the absence of statutory impediments, *cf. State ex rel. McGoldrick* v. *Lewis* (1901), 12 Ohio Dec. 46, 50.

Indeed, if the matter of successor binding is crucial, there is no reason why a contract cannot be negotiated with an open termination clause providing successors with the option to continue or modify.

Nor do the Ohio cases of binding authority foreclose the notion that power implied from a school board's power to contract individually with its teachers provides the authority for a collective bargain.

## VI.

The appellee operates the school district under a series of statutory provisions, Ohio Rev. Code §3313, *et seq.* Those statutory powers in parts relevant to the issue of the power to collectively bargain are:

§3313.17:

"The board of education of each school district shall be a body politic and corporate, and, as such, capable of suing and being sued, *contracting and being contracted with*, acquiring, holding, possessing, and disposing of real and personal property, and taking and holding in trust for the use and benefit of such district, any grant or devise of land and any donation or bequest of money or other personal property." (Emphasis supplied.)

§3319.08:

"The board of education of each city . . . shall enter into written contracts for the *employment* and *reemployment* of all teachers. (Emphasis supplied.)

The statutes do not command collective bargaining. They do provide a basis for the implied authority to bargain collectively. The power to contract and the duty to enter into written contracts with teachers is explicit. The statute does not specify individual written contracts. In our view the legislature did not intend to bind the school boards of the state to a duty to enter into written contracts with teachers and at the same time insure that the burden of bargaining those contracts be as onerous as multiple, individual bargains could make it. Such a burden on administration with consequent waste in efficiency, time, and money should not be inferred. If this consequence is the intent of the legislature, it must be made manifest by specific legislative direction.

Accordingly, we find that the appellants' first assignment of error—that the trial court erred in concluding that a board of education is barred from entering into a collective bargaining contract with a voluntary association of certificated teachers—is well taken. It follows that appellants' second assignment assessing error for the trial court's refusal to enforce such a contract is also well taken subject to the limits and reservations delineated in the discussion of the third assignment of error in VII.

## VII.

The third and final assignment of error is aimed at the trial court's conclusion that a contract provision between a school board and a teachers association providing for final and binding arbitration of grievances is void because such an agreement constitutes an unlawful delegation of board authority.

The argument that final and binding arbitration of grievances is an unlawful delegation of power founders upon two considerations. These are, first, the kinds of issues which are subject to arbitration, and second, the conditions which render the arbitrator's decision final.

The arbitration clause in issue here is confined to griev-

ances and does not purport to reach basic contract terms.[10] Thus, there is no requirement that crucial policy questions be submitted to arbitration. In addition, should the arbitrator decide corruptly, or contrary to law, or exceed the authority of the submission in a decision on a matter properly submitted, his judgment is subject to challenge in a court of law.[11] Given these conditions there can be no unlawful delegation of board authority without court challenge. The third assignment of error is well taken. Reversed and remanded for further proceedings according to law.

*Judgment reversed.*

SILBERT, C. J., and KRENZLER, J.,[12] concur.

---

[10]The arbitration of terms and conditions, in contrast to grievances only, is the custom in only a few industries. It is in the arbitration of basic terms and conditions in an agreement—in contrast to interpretation and application of terms—that the delegation of policy judgments is clearly discernible. Obviously, policy judgments cannot be delegated by a school board. See those contract matters for which arbitration was ordered in *Hamilton Local Board of Education* v. *Mrs. Judith Arthur*, No. 73 AP-179 (Fr. Ct. App. 7/24/73) unreported, but, contained in Appendix B, Appellee's Answer Brief. The Court of Appeals reversed the trial court's order commanding arbitration of such issues as "salary and fringe benefits," p. 12, *id.* These are obviously basic contract terms, not matters of interpretation or application of the contract.

[11]*International Ladies Garment Workers' Union, AFL-CIO*, v. *Ashland Industries, Inc.* (5th Cir., 1974), 488 F. 2d 641, 644; *Schlesinger* v. *Building Service Employees International Union, Local 252, AFL-CIO* (E. D. Pa., 1973), 367 F. Supp. 760, 764; *cf. United Steel Workers of America* v. *Enterprise Wheel and Car Corp.* (1960), 363 U. S. 593, 598, 4 L. Ed. 2d 1424, 1429. See also Ohio Rev. Code §2711.01 (Page's Supp.) and *Corrigan* v. *Rockefeller* (1902), 67 Ohio St. 354, 368 (civil action for rescission of contract submitted to arbitration); *Firemen's Ins.* v. *Petrie* (Cuyahoga County, C. P., 1966), 10 Ohio Misc. 188, 194, 226 N. E. 2d 808, 812 (uninsured motorist claim submitted to arbitration).

[12]Reporter's Note: For concurring opinion by KRENZLER, J., see *post* 251.