This case was appealed to the Court of Appeals on questions of law and fact. No motion was filed in that court to challenge the jurisdiction of that court to entertain the cause upon such appeal.
Under the authorities cited in the per curiam opinion inTrumbull Savings Loan Co. v. Saviers, 115 Ohio St. 403,154 N.E. 317, the Court of Appeals had jurisdiction to proceed.
The Chief Justice, Judge Bell and the writer are of the opinion that as the instant case was not a chancery case and as the parties had no power to confer jurisdiction upon the Court of Appeals, that court should have retained and decided the case on questions of law. (Section 12223-22, General Code.) However, we must now accept the Saviers case as stare decisis.
Appellant complains that "the Court of Appeals should have reviewed the declaratory judgment of the Court of Common Pleas and either affirmed or reversed said judgment." We cannot sustain this contention of appellant.
Among the matters complained of by appellant is the consideration by the Court of Appeals of ordinance No. 15937, enacted subsequent to the decision of the Court of Common Pleas, and the holding of the Court of Appeals thereon "that the question heretofore adjudicated by said Common Pleas Court determining that the expense or costs involved in making such union dues deductions could not be paid from public funds is now a moot question upon which this court will express no opinion."
 It was held in the case of Miner v. Witt, City Clerk, 82 Ohio St. 237, 92 N.E. 21:
"It is not the duty of the court to answer moot questions, and when, pending proceedings in error in this court, an event occurs without the fault of either party, which renders it impossible for the court to grant any relief, it will dismiss the petition in error." *Page 326 
In the case of Mills v. Green, 159 U.S. 651, 653,40 L.Ed., 293, 16 S.Ct., 132, quoted with approval by this court in itsper curiam opinion in the case of Miner v. Witt, supra, Mr. Justice Gray says:
"The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. And such a fact, when not appearing on the record, may be proved by extrinsic evidence."
We are, therefore, of the opinion that the Court of Appeals committed no error in considering ordinance No. 15937. CompareState, ex rel. Apple, v. Pence et al., Bd. of Edn., 137 Ohio St. 569, 31 N.E.2d 841.
The principal question propounded by appellant is: "Did the Court of Appeals commit error when it found that the city of Dayton, Ohio, could enter into a valid agreement with its employees in favor of a labor union as contemplated by the language of Section 6346-13 of the General Code of Ohio relating to a check-off on the wages of such employees by the enactment of an ordinance providing for dues deduction?"
Section 6346-13, General Code (118 Ohio Laws, 656), provided at the time of the enactment of ordinance No. 15776:
"Notwithstanding the provisions of Section 6346-12 of the General Code of Ohio, no assignment of, or order for wages or salary shall be valid if made after *Page 327 
this act goes into effect. Nothing herein shall affect or invalidate any contract or agreement between the employers and their employes, or as between employers, employes, and any labor union as to any check-off on the wages of such employes as may be agreed upon."
The constitutionality of the foregoing section, or any part thereof, not having been challenged, we shall not pass upon that question.
Under Section 6346-13, General Code, as it stood at the time of the passage of ordinances No. 15776 and No. 15937, any assignment of, or order for, wages or salary was invalid in the absence of a contract such as described in Section 6346-13, General Code. We are of the opinion that a municipal corporation of the state of Ohio does not come within the meaning of "employers" as used in Section 6346-13, General Code. We are also of the opinion that civil service appointees do not come within the definition of 'employes" as used in such section.
It is earnestly argued by appellees that the municipality has the power to enact the ordinance herein in question, under the home-rule provision of the Ohio Constitution, especially Sections 3 and 7 of Article XVIII thereof.
Section 3 provides:
"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."
Section 7 provides:
"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this Article, exercise thereunder all powers of local self-government."
Appellees argue that "the ordinance obviously isn't *Page 328 
nor is it claimed to be a 'police, sanitary or other similar regulation.' " We cannot agree with this contention. The enactment of any ordinance which is aimed at the preservation of the health, safety, welfare or comfort of citizens of a municipality is the exercise of police power. Ordinance No. 15776 (with or without its supplemental ordinance No. 15937) is the exercise of police power. Ordinance No. 15776 conflicts with a general law, to wit, Section 6346-13, General Code, which provides that no wage assignments except those specifically exempted shall be valid. The wage assignments covered by ordinance No. 15776 do not come within the exception of the statute.
There is no municipal purpose served by the checkoff of wages of civil service employees. Counsel for appellees argue that a check-off is a convenience to both the municipal appointee and the labor union. We must be realistic and take judicial notice, of what is generally known, that the check-off is a means of maintaining membership. Indeed, the record in this case shows that each so-called contract member is required to give a cognovit note for twenty months dues in advance and these proposed check-off payments are to be applied on such notes. The check-off is contrary to the spirit and purpose of the civil service laws of the state.
Section 10 of Article XV of the Constitution of Ohio provides:
"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."
Under this section of the Constitution and the laws enacted pursuant thereto, labor unions have no function *Page 329 
which they may discharge in connection with civil service appointees.
Paragraph 10 of the stipulation on which this case was tried reads:
"A portion of the classified employes of the city of Dayton, Ohio, who are eligible for membership therein, have selected the Dayton Public Service Union, an unincorporated association, as their agent and representative in discussing and adjusting with their employer, the city of Dayton, Ohio, all questions of wages, hours of work and conditions of employment affecting such member employes."
The laws of this state, the regulations of the civil service commissions, state and municipal, and the valid ordinances of the particular municipality cover fully all questions of wages, hours of work and conditions of employment affecting civil service appointees. Municipal civil service appointees are to be appraised and promotions are to be made in individual cases according to merit, fitness and seniority. There is no authority for the delegation either by the municipality or the civil service appointees of any functions to any organization of any kind. Each tub must stand on its own bottom. The law provides for the election and appointment of officials whose duties would be interfered with by the intrusion of outside organizations. Nothing said herein is intended to limit free speech but it is intended to limit interference byorganizations with the duties of the duly elected and appointed officials.
Section 486-1, General Code [Section 486-1a, General Code], defines terms and in paragraph 6 thereof provides:
"The term 'appointing authority' signifies the officer, commission, board, or body having the power of appointment to or removal from positions in any office, department, commission, board or institution." *Page 330 
Section 486-2, General Code, provides that appointments to, and promotions in, the civil service shall be made only according to merit and fitness to be ascertained as far as practicable by competitive examinations; that, after an appointment is made, removals, transfers, lay-offs, suspensions, reinstatements, promotions or reductions shall not be made in any manner or by any means other than those prescribed in the civil service act or by the rules of the state or municipal civil service commissions.
Under Section 486-7, General Code, it is the duty of the state and municipal civil service commissions to make investigations in all matters touching the enforcement and effect of the civil service laws and the administrative rules of the commissions.
Subdivision (b) of Section 486-8, General Code, provides:
"The classified service shall comprise all persons in the employ of the state, the several counties, cities and city school districts thereof, not specifically included in the unclassified service, to be designated as the competitive class and the unskilled labor class.
"1. The competitive class shall include all positions and employments now existing or hereafter created in the state, the counties, cities and city school districts thereof, for which it is practicable to determine the merit and fitness of applicants by competitive examinations. Appointments shall be made to, or employment shall be given in, all positions in the competitive class that are not filled by promotion, reinstatement, transfer or reduction, as provided in this act, and the rules of the commission, by the appointment from those certified to the appointing officer in accordance with the provisions of this act."
As to the unskilled labor class, in addition to providing the rules for registration and the tests to be made, "laborers who fulfill the requirements shall be *Page 331 
placed on the eligible list for the kind of labor or employment sought and preference shall be given in employment in accordance with the rating received from such evidence or in such tests. * * *"
Section 486-9a, General Code, requires citizenship as a condition precedent to civil service examination, while Section 486-10, General Code, provides in part:
"All applicants for positions and places in the classified service shall be subject to examination which shall be public, and open to all, within certain limitations to be determined by the commission, as to citizenship, residence, age, sex, experience, health, habit and moral character; * * *
"Applicants taking promotional examinations, which shall be in writing, shall receive credit for seniority, which shall be determined as follows: One per centum of the total grade attainable in such examination for each of the first four years of service and six-tenths per centum of such total grade for each of the next ten years of service. * * *"
Section 486-11, General Code, provides, inter alia, that the civil service commission shall require persons applying for admission to an examination to file information as to:
"(3) Health and physical capacity for the public service sought.
"(4) Business and employments and residences for five previous years.
"(5) Such other information as may be reasonably required touching the applicant's merit and fitness for the public service sought; * * *
"The commission may refuse to examine an applicant, or after an examination to certify an eligible, who is found to lack any of the established preliminary requirements for the examination or who is physically so disabled as to be rendered unfit for the performance of the duties of the position which he seeks, *Page 332 
or who is addicted to the habitual use of intoxicating liquors or drugs to excess, or who has been guilty of any crime or of infamous or notoriously disgraceful conduct, or who has been dismissed from either branch of the civil service for delinquency or misconduct, or who has made false statements of any material fact, or practiced, or attempted to practice, any deception, or fraud in his application or in his examination, in establishing his eligibility or securing his appointment."
Section 486-12, General Code, provides for the preparation of an, eligible list and the priority of appointments therefrom.
Section 486-13, General Code, provides how appointments shall be made, the probationary period and the record of service and "Appointments to all positions in the classified service, as herein defined, that are not filled by promotion, transfer or reduction, as provided for in this act and the rules of the commission prescribed thereunder, shall be made only from those persons whose names are certified to the appointing officer in accordance with the provisions of this act, and no employment, except as provided in this act, shall be otherwise given in the classified service of this state or any political subdivision thereof. * * *
"All original and promotional appointments shall be for a probationary period of not to exceed three months to be fixed by the rules of the commission, and no appointment or promotion shall be deemed finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the appointing officer shall transmit to the commission a record of the employee's service, and if such service is unsatisfactory, the employee may, with the approval of the commission, be removed or reduced without restriction; but dismissal or reduction may be *Page 333 
made during such period as is provided for in Sections 486-17 and 486-17a of the General Code. * * *"
Section 486-15, General Code, provides:
"Vacancies in positions in the classified service shall be filled in so far as practicable by promotions. The commission shall provide in its rules for keeping a record of efficiency for each employe in the classified service, and for making promotions in the classified service on the basis of merit, to be ascertained as far as practicable by promotional examinations, by conduct and capacity in office, and by seniority in service; and shall provide that vacancies shall be filled by promotion in all cases where, in the judgment of thecommission, it shall be for the best interest of the service so to fill such vacancies. All examinations for promotions shall be competitive. In promotional examinations efficiency andseniority in service shall form, a part of the maximum mark attainable in such examination. In all cases where vacancies are to be filled by promotion, the commission shall certify to the appointing authority only the name of the person having the highest rating. The method of examination for promotions, the manner of giving notice thereof, and the rules governing the same shall be in general the same as those provided for original examinations, except as otherwise provided herein." (Italics ours.)
Section 486-15a, General Code, provides the methods and conditions for promotions in positions above the rank of policeman and fireman.
Section 486-16, General Code, provides for transfers and reinstatements.
Section 486-17, General Code, provides the method and conditions of making the reductions, lay-offs and suspensions and contains the following:
"Nothing in this act contained shall limit the power of an appointing officer to suspend without pay, for *Page 334 
purposes of discipline, an employe or subordinate for a reasonable period, not exceeding thirty days * * *."
Such section also provides that "the appointing authority shall furnish such employe or subordinate with a copy of the order of lay-off, reduction or suspension and his reasons for the same, and give such employe or subordinate a reasonable time in which to make and file an explanation."
Section 486-17a, General Code, provides the tenure and method of removal "of every officer, employe or subordinate in the classified service."
Section 486-19, General Code, providing for the creation of municipal civil service commissions, provides in part:
"Such municipal commission shall prescribe, amend and enforce rules not inconsistent with the provisions of this act for the classification of positions in the civil service of such city, city school district, and all the positions in the city health district; for examinations and registrations therefor; and for appointments, promotions, removals, transfers, layoffs, suspensions, reductions and reinstatements therein; and for standardizing positions and maintaining efficiency therein. Said municipal commission shall have and exercise all other powers and perform all other duties with respect to the civil service of such city, city school district and city health district, as herein prescribed and conferred upon the state civil service commission with respect to the civil service of the state; and all authority granted to the state commission with respect to the service under its jurisdiction shall, except as otherwise provided in this act, be held to grant the same authority to the municipal commission with respect to the service under its jurisdiction. * * *
"Whenever the state commission shall have reason to believe that a civil service commission of any city is violating or is failing to perform the duties imposed *Page 335 
upon it by law, or that any member of such municipal commission is wilfully or through culpable negligence violating the provisions of the law or failing to perform his duties as a member of such commission, it shall institute an investigation, and if in the judgment of the state commission, it shall find any such violation or failure to perform the duties imposed by law, it shall make a report of such violation in writing to the chief executive authority of such city, which report shall be a public record. * * *"
Section 486-21, General Code, provides in part:
"After the taking effect of this act it shall be unlawful for the auditor of state, or for any fiscal officer of any county, city or city school district thereof, to draw, sign or issue or authorize the drawing, signing or issuing of any warrant on the treasurer or other disbursing officer of the state, or of any county, city or city school district thereof, to pay any salary or compensation to any officer, clerk, employe, or other person in the classified service unless an estimate, payroll or account for such salary or compensation containing the name of each person to be paid, shall bear the certificate of the state civil service commission, or, in case of the service of a city, the certificate of the municipal service commission of such city, that the persons named in such estimate, payroll or account have been appointed, promoted, reduced, suspended, or laid off or are being employed in pursuance of this act and the rules adopted thereunder. * * *"
Section 486-22, General Code, provides:
"Whenever a civil service commission shall have reason to believe that any officer, board, commission, head of a department, or person having the power of appointment, lay-off, suspension or removal, has abused such power by making an appointment, lay-off, reduction, suspension, or removal in violation of the provisions of this act, it shall be the duty of the commission *Page 336 
to make an investigation, and if it shall find that such violation of the provisions or the intent and spirit of this act has occurred, it shall make a report thereof to the governor, or in the case of a municipal officer or employe to the mayor or other chief appointing authority, who shall have the power to remove forthwith such guilty officer, board, commission, head of department, or person; an opportunity first having been given to such officer, employe or subordinate of being publicly heard in person or by counsel in his own defense, and such action of removal by the governor, mayor or other chief appointing authority shall be final except as otherwise provided herein."
Section 486-23, General Code, provides:
"No officer, employe or subordinate in the classified service of the state, the several counties, cities and city school districts thereof, shall directly or indirectly, orally or by letter, solicit or receive, or be in any manner concerned in soliciting or receiving any assessment, subscription or contribution for any political party or for any candidate for public office; nor shall any person solicit directly or indirectly, orally or by letter, or be in any manner concerned in soliciting any such assessment, contribution or payment from any officer, employe or subordinate in the classified service of the state, the several counties, cities or city school districts thereof; nor shall any officer or employe in the classified service of the state, the several counties, cities and city school districts thereof be an officer in any political organization or take part in politics other than to vote as he pleases and to express freely his political opinions."
Section 486-29, General Code, preserves the right of action to any taxpayer to bring an action to restrain the payment of compensation in violation of the provisions of the civil service act.
Section 486-30, General Code, provides in substance *Page 337 
that prosecutions for the violation of the civil service act and the rules and regulations of any municipal commission shall be instituted by such municipal commission through the legal department of such city or by such municipal commission acting through special counsel.
Therefore, we are of the opinion that ordinance No. 15776, together with its supplement, ordinance No. 15937, is invalid, and that the director of finance and city accountant of the city of Dayton has no right or power to check off for the Dayton Public Service Union, and all assignments of wages made for the purpose of such check-off are invalid.
The judgment of the Court of Appeals herein is hereby reversed and final judgment is awarded appellant.
Judgment reversed.
WEYGANDT, C.J., MATTHIAS and HART, JJ., concur.
ZIMMERMAN and BELL, JJ., concur in the judgment.
SOHNGEN, J., not participating.