Matthias, J.
The city Auditor bases his refusal to comply with the quoted provision of the ordinance on the ground that it is invalid for one or more of the following reasons:
1. It authorizes an expenditure of public funds for a nonpublic purpose.
2. It authorizes the city of Columbus to aid a private corporation in contravention of Section 6, Article VIII of the Constitution of Ohio.
3. It authorizes an assignment of wages in violation of Section 1321.32, Revised Code.
4. It authorizes the assignment of future wages by a public officer in contravention of public policy forbidding such assignments.
It is clear that, since the money that would be paid into the .credit union is nothing more than a part of. the salary of the employee, it cannot be successfully contended that the payment of such money would constitute an expenditure of public money.
In fact, the only basis upon which respondent’s first two contentions could be sustained is that the increase in the cost of bookkeeping and clerical work necessary to accomplish the authorized deduction and disbursement would amount to either a contribution to a private corporation or would be an expenditure of public money for a nonpublic purpose.
There can be no question that the payment of salaries or wages of its employees by a governmental employer and the preparation of a payroll are necessary and proper governmental functions, and that the expenditure of funds therefor constitutes a proper expenditure of public money.
The payment of wages by an employer has progressed far from the old method of merely handing the employee his total wages at the end of the pay period and having him, individually, take care of all his tax and other obligations. The present payroll, even among governmental agencies, is a very complicated *501 document, and few are the employees, whether private or governmental, in the present day who see their total wages.
Sections 1737.22 and 1739.15, Revised Code, specifically allow, upon proper authorization by the employee, the deduction from the wages of “an employee of the state, [or] of any political subdivision or district of the state” of the amount of his subscription payment to any medical-care corporation or hospital-service association. Sections 9.80 and 9.81, Revised Code, authorize the institution of a payroll deduction plan for contributions by governmental employees to one or more charitable agencies. Section 145.47, Revised Code, requires the deduction of a certain per cent of the salary of a governmental employee for contribution to the Public Employees Retirement System. Federal statutes require the deduction of Social Security and income-tax payments, and the allowance of authorized deductions for the purchase of United States savings bonds is almost universal.
Each of those authorized deductions also involves a disbursement, and each increases the complexity and cost of the governmental payroll. It is clear that the additional bookkeeping cost of adding to this already complex and expensive procedure the deduction and disbursement here under consideration would be minimal.
At this point it is important to note that a credit union is not an ordinary private corporation for profit. It is one which is organized under special statutory provisions (Section 1733.01 et seq., Revised Code), and whose object, as provided by Section 1733.01, is “to promote thrift among, and to provide credit for, its members.” The membership of a credit union is limited to persons living within a well defined district, such district being detailed in its articles. The membership of any given credit union is .limited, by Section 1733.10, Revised Code, to certain well defined groups of people, included in which are ‘ ‘ employees of a common employer, whether governmental or otherwise, and members of their immediate families.” The operation of a • credit union, the purchase of shares and the borrowing of money are limited to the members of the credit union, and its monetary benefits inure solely to its members.
It must also be noted that today the credit union has come *502 to be one of tbe accepted incidental job-benefits offered to employees, and that it is beneficial to both employer and employee.
It is beneficial to tbe employer in that it is to his interest to promote tbe security and well being of bis employees. An employee who has a feeling of security is more content and efficient, and tbe existence of a credit union in wbicb be can save money and to wbicb be can turn in case of financial need is conducive to a feeling of security.' Tbe existence of a credit union composed of governmental employees is especially beneficial to tbe governmental employer, since it is one of tbe few incidental benefits wbicb may be offered by sucb employer as an inducement to obtaining and keeping competent employees. This, of course, is to tbe advantage of tbe public which sucb governmental employer serves.
Tbe credit union is beneficial to tbe employee in that it provides him not only with a ready source for the economical borrowing of money, but, with authorized salary deductions, it also provides him with a comparatively painless savings process.
Since the over-all benefits of a credit union whose membership is limited to governmental employees inure • solely to the governmental employer, tbe public which it serves and to tbe governmental employees, we conclude that tbe slight increase in tbe cost of bookkeeping and clerical work in handling tbe salary deductions and disbursements contemplated by tbe provision of tbe ordinance herein, as a part of an already complex and expensive payroll procedure, does not constitute an invalid expenditure of public money either for a nonpublic purpose or in aid of a private corporation in contravention of Section 6, Article VIII of tbe Constitution of Ohio.
Bespondent contends further that tbe transaction, contemplated by tbe provision of tbe ordinance, of deducting an authorized amount from tbe wages of an employee and automatically transferring it, on bis behalf, to tbe credit union, for addition to bis share account therein, constitutes an assignment of wages and is forbidden either by tbe provisions of Section 1321.32, Be-vised Code, or by tbe rule of public policy wbicb forbids tbe assignment of future wages by a public officer. If sucb transaction does, in fact, constitute an assignment of wages as contemplated either by tbe statute or by tbe rule of public policy, then both *503 contentions are correct. However, if the transaction does not constitute such an assignment, then neither objection has substance.
Beference to the subject of assignment of wages in both American Jurisprudence and Corpus Juris Secundum shows that, in the absence of statute, wages may be legitimately assigned unless the subject of the assignment is the wages of a public officer. The rule which makes wages of public officers nonassignable is based “not upon their private interest, but upon the necessity of securing an efficient public service by insuring that the funds provided for its maintenance shall be received by those who are to perform the work, at the periods appointed for their payment. The assignment of such funds before they are due is forbidden under public policy as impairing the efficiency of the public service.” 4 American Jurisprudence, 265, Section 46, and cases cited; 6 Corpus Juris Secundum, 1068, Section 21.
The general rule recognizing the legality of wage assignments has been partially abrogated in Ohio by statute. Section 1321.32, Bevised Code, reads as follows:
“Notwithstanding Section 1321.31 of the Bevised Code, no assignment of, or order for wages or salary is valid unless the wages assigned or ordered are to be paid for the support of the employee’s minor child in complying with an order of a court of record for the support of the employee’s minor child. This section does not affect or invalidate any contract or agreement between employers and their employees, or as between employers, employees, and any labor union as to any checkoff on the wages of such employees as may be agreed upon. ’ ’
It is seen that that section of the Bevised Code contains certain exceptions to its major provision forbidding wage assignments, and we again call attention to the other sections of the Bevised Code which must also be considered as exceptions to such provision, i. e., the authorized deductions for the Public Employees Betirement System, for subscriptions or contributions to medical-care corporations, for hospital-service associations, for authorized charities and for the purchase of United States savings bonds.
This court considered one of the exceptions to the pro *504 hibition against wage assignments in the case of Hagerman, Dir., v. City of Dayton, 147 Ohio St., 313, 71 N. E. (2d), 246, 170 A. L. R., 199, the concurring opinion of which respondent relies upon to support his contention that the transaction here in question would be in violation of Section 1321.32, supra.
That case involved the validity of an ordinance providing for the checkoff of union dues for municipal employees. The majority opinion of this court, in invalidating the ordinance, determined, among other things, that the municipality was not such an employer as is contemplated by Section 6346-13, General Code (Section 1321.32, Bevised Code, supra), and that employees of municipalities are not within the exception to the prohibitory provisions of the statute, allowing a checkoff of union dues.
It is seen that the deduction of union dues from the salary of a public employee involves quite a different transaction from the deduction here under consideration. In fact, each of the authorized deductions hereinbefore mentioned, except those for the Public Employees Betirement System, Social Security and United States savings bonds, differs from the instant transaction in that the employee never sees his motpey again once it is deducted from his salary and disbursed. He receives benefits from such expenditure of his money, of course, in the nature of insurance, retention of his membership in a collective bargaining unit which works for his benefit, or the aiding of a worthy charity, but it is clear that he has spent his money rather than having saved it.
An assignment is defined in 4 American Jurisprudence, 229, Section 2, as “a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one’s whole interest in an estate, or chattel, or other thing. ’ *
Prom this, it is clear that an assignment of wages to a medical-care corporation, a hospital-service association, a labor union or a charity is a complete assignment of the assignor’s whole interest in the wages assigned and would be invalid as coming within the prohibition of Section 1321.32, in the absence of statutory allowance. It is also clear that an authorized deduction from wages for payment to a credit union for the pur *505 pose of having a part of one’s wages automatically added to a savings account therein is not a complete assignment within the definition set out and does not fall within the prohibition of Section 1321.32, regarding the assignment of wages.
From this we can conclude only that an ordinance empowering a city employee to “authorize a deduction from his salary or wages * * * for savings in his share account with the * * * employees * * * credit union” does not contemplate an assignment of wages such as is forbidden by Section 1321.32, Bevised Code, and is not invalid as being in conflict therewith.
It is also apparent that the deduction herein authorized does not fall within the prohibition of the public policy forbidding the assignment of future wages by public officers for the same reasons that it does not fall within the prohibition of Section 1321.32, Bevised Code, i. e., the assignment contemplated by the public policy is the complete divesting of ownership of such future wages, not the mere authorized deduction of a portion of such future wages for a savings account.
For the reasons herein set out, the demurrer to the petition is overruled, and, the parties having agreed that our ruling on the demurrer shall be dispositive, the writ of mandamus is allowed.

Demurrer overruled and writ alloioed.

Zimmerman, Stewart, Taet, Bell and Herbert, JJ., concur.