THE STATE, EX REL. OHIO CIVIL SERVICE EMPLOYEES ASSOCIATION ET AL., *v.* STACKHOUSE, CO. ENGR.

(No. 42660—Decided March 19, 1981.)

*Mr. John J. Gideon,* for relators.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. David A. Williamson,* for respondent.

CORRIGAN, P.J. This is an original action in mandamus brought by the Ohio Civil Service Employees Association (OCSEA) and 73 employees from the office of the county engineer against Ronald Stackhouse, Cuyahoga County Engineer (respondent).

OCSEA is a duly chartered, nonprofit Ohio corporation, authorized to do business in this state as a labor organization for state, county and municipal employees. In January 1980, a number of employees in the county engineer's office, who were members of OCSEA, presented respondent with properly executed dues deduction cards, requesting that respondent "checkoff"[1] their OCSEA dues from the wages which he paid them.

At the time of relators' request, respondent afforded checkoff privileges to three other unions with whom in the past he had negotiated labor agreements concerning the hourly wages paid different classifications of his employees. However, prior to January 1980, respon-

dent had never recognized any of these unions as the exclusive bargaining agent for his employees; and, by January 1980, respondent was no longer attempting to bind his office to a labor agreement with any of these three unions. See *American Federation of Employees v. Polta* (1977), 59 Ohio App. 2d 283 [13 O.O.3d 284].

Nevertheless, respondent denied relators' request for checkoff privileges because he had never in the past negotiated an agreement or memorandum of understanding with OCSEA.

Thereafter, on July 16, 1980, relators filed, with this court, a complaint for a writ of mandamus to compel respondent to grant them checkoff privileges.[2] In his answer to their complaint, respondent denied that he was under a clear legal duty to grant relators the checkoff privileges they requested.

The parties have stipulated the evidence and submitted trial briefs. Upon reviewing their stipulations of fact and the applicable law, we conclude that respondent was not under a clear legal duty to grant relators' request for checkoff privileges, and that, therefore, relators have not demonstrated their entitlement to the extraordinary relief they seek.

The subject of dues checkoffs in public sector employment is governed by R.C. 9.41,[3] which provides:

"Notwithstanding section 1321.32 of the Revised Code, *the state of Ohio and any of its political subdivisions or instrumentalities may checkoff on the wages of public employees for the payment of dues*

---

[1] The checkoff privilege is a union security device which requires an employer to deduct union dues from the wages of his employees and transmit the dues directly to the employees' union representative. See Annotation 95 A.L.R. 3d 1102, 1120-25.

[2] This court subsequently determined, on October 24, 1980, that this action could be properly maintained as a class action. See Civ. R. 23(C)(1).

[3] R.C. 9.41, formerly numbered R.C. 1321.321, was apparently enacted by the Ohio Legislature to overrule a holding by the Supreme Court in *Hagerman v. Dayton* (1947), 147 Ohio St. 313 [34 O.O. 238].

In *Hagerman,* the Supreme Court construed the predecessor statute of R.C. 1321.32, which, *inter alia,* provided for the granting of checkoff privileges as an exception to the general prohibition against wage assignments

*to a labor organization* or other organization of public employees upon written authorization by the public employee. Such authorization may be revocable by written notice upon the will of the employee.

"A labor organization or other organization of public employees receiving such checkoff of dues may be required by the state of Ohio and any of its political subdivisions or instrumentalities to defray the actual cost of making such deductions." (Emphasis added.)

By employing the word "may," instead of "shall," in the statutory language underscored above, it is evident that the legislature intended to give discretion to public employers in the granting of checkoff privileges to employees and the unions to which they belong. See *Dorrian* v. *Scioto Conservancy District* (1971), 27 Ohio St. 2d 102 [56 O.O.2d 58]. Cf. *State, ex rel. Niles,* v. *Bernard* (1978), 53 Ohio St. 2d 31, 34 [7 O.O.3d 119]. Indeed, relators do not argue that, on its face, R.C. 9.41 imposes a clear legal duty upon *respondent to grant them checkoff* privileges.

Instead, relators argue that, once *respondent had granted checkoff* privileges to other unions, he could not, consistent with the Equal Protection Clause of the Fourteenth Amendment, deny them the same privilege, and that, for this reason, as applied here, R.C. 9.41 did impose upon respondent a clear legal duty to grant checkoff privileges to respondents.

In support of this argument, relators cite two decisions of Ohio common pleas courts, which hold that equal protection is violated where a public employer discriminates among unions or employees in the granting of checkoff privileges. See *Cummings* v. *Porter* (Cuyahoga C.P. No. 938,394, March 21, 1977), unreported[4]; and *Ohio Civil Service Employees Assn.* v. *Richley* (1972), 33 Ohio Misc.1 [62 O.O.2d 6]. For the reasons which ensue, we decline to follow or extend the general holdings of these decisions, and, instead, hold that equal protection is not *per se* violated when a public employer discriminates among the unions and employees to whom it grants, under R.C. 9.41, checkoff privileges.

In adjudicating an equal protection claim against state action which discriminates among classes, a mere rationality test is to be employed where neither a fundamental interest nor a suspect class is involved. *Massachusetts Bd. of Retirement* v. *Murgia* (1976), 427 U.S. 307, 312. Thus, under this test, a classification must be upheld as constitutionally permitted, unless its assailant demonstrates that it is not rationally related to the furthering of any legitimate state interest. See, *e.g., Vance* v. *Bradley* (1979), 440 U.S. 93, 96-97.

In *City of Charlotte* v. *Local 660, International Assn. of Firefighters* (1976), 426 U.S. 283, the United States Supreme Court addressed the issue of whether discrimination by a public employer in the granting of checkoff privileges to employees and unions offends equal protection. In that case, the court held that it did not.

Employing the mere rationality test, the Supreme Court accepted one of the three reasons advanced by the petitioner

---

not involving spousal or child support, to not encompass public employers or employees. *Id.,* at paragraphs three and four of the syllabus.

By enacting R.C. 9.41, the legislature, in effect, merely clarified its intent in enacting R.C. 1321.32 to permit, as may be agreed upon among employers, employees and unions, wage assignments deriving from the implementation of a dues checkoff practice.

[4] An appeal from the judgment rendered in that case was dismissed by this court for failure to file a timely notice of appeal. See *Cummings* v. *Porter* (Cuyahoga Cty. Ct. of Appeals No. 33273, February 8, 1979), unreported.

city, viz., that financial costs dictated that checkoffs be permitted only where all city or departmental employees were to be benefited, as demonstrative of the rationality of the classification at issue, and accordingly upheld the classification. *Id.*, at pages 287-289. The court did not have occasion to address the merits of one of the remaining two justifications offered by the city, viz., its desire to preserve the checkoff as a bargaining chip in any future labor negotiations. *Id.*, at pages 286-287.

In the present action, respondent, in essence, presses this latter argument as justification for the classification he has created. The parties' stipulated evidence reveals that respondent granted checkoff privileges only to those unions, and their employee-members, with whom respondent had negotiated labor agreements or memoranda. In his brief, respondent submits that, in his estimation, this classification scheme is promotive of labor stability in his office.

While we might not, were we in respondent's position, withhold the granting of checkoff privileges in order to employ the matter as a bargaining chip in future labor negotiations, we nevertheless cannot say that the classification respondent has created is not rationally related to the furthering of a legitimate state interest, *i.e.*, labor stability.

In *State, ex rel. Fraternal Order of Police,* v. *Tegreene* (1979), 58 Ohio St. 2d 235 [12 O.O.3d 237], the Ohio Supreme Court implicitly recognized that dues checkoff is a proper subject for collective bargaining in the public sector. *Id.*, at page 236. In that case, the court sanctioned the use of this bargaining chip by a majority union to weaken the position of a competing minority union.

If the issue of dues checkoff can be thus legitimately used by a union, it is certainly "rational" for a public employer to use it for the purpose of bringing a union to the bargaining table and perhaps exacting employment-related concessions. Such use of the employer's discretion in collective bargaining is apparently consistent with accepted labor law practice, and does not, in our opinion, constitute interference with the right of public employees to select their own bargaining agents. Cf. *Civil Service Personnel Assn.* v. *Akron* (1976), 48 Ohio St. 2d 25 [2 O.O.3d 98].

Accordingly, we hold that, where a public employer withholds the granting of checkoff privileges from those unions, and their employee-members, with whom it has never negotiated labor agreements or memoranda, equal protection is not, as a result, offended.

Relators next assert, however, that, because respondent's predecessor in office, Albert Porter, previously litigated this issue of discrimination among unions in the implementation of R.C. 9.41, as being violative of equal protection, and lost, in the case of *Cummings* v. *Porter, supra* (Cuyahoga C.P.), we must conclude that respondent is collaterally estopped from relitigating the issue in this proceeding. We do not agree with relators that the doctrine of collateral estoppel should be applied in this proceeding to preclude respondent from demonstrating that the classifications he created, during his tenure in office, in granting checkoff privileges under R.C. 9.41, did not offend equal protection.

In *Hicks* v. *De La Cruz* (1977), 52 Ohio St. 2d 71, at page 74 [6 O.O.3d 274], the Supreme Court discussed the doctrine of collateral estoppel and its proper application:

"The modern view of *res judicata* embraces the doctrine of collateral estoppel, which basically states that *if an issue of fact or law actually is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive* in a subsequent action between the

parties, whether on the same or a different claim. *A party precluded under this principle from relitigating an issue with an opposing party likewise is precluded from doing so with another person unless he lacked full and fair opportunity to litigate that issue in the first action, or unless other circumstances justify according him an opportunity to relitigate that issue.* Restatement of the Law 2d, Judgments (Tent. Draft No. 4 [1977]), Section 68, at page 1, and (Tent. Draft No. 2 [1975]), Section 88, at pages 89-90." (Emphasis added.) But, cf., *Trautwein v. Sorgenfrei* (1979), 58 Ohio St. 2d 493, 501 [12 O.O.3d 403] (dicta therein suggesting that identity of parties is necessary for proper application of the doctrine).

Clearly, however, in order to successfully assert that the doctrine of collateral estoppel should be applied here, relators must allege and prove that the prior judgment in *Cummings v. Porter, supra* (Cuyahoga C.P.), necessarily determined the *identical* issue which respondent seeks to relitigate in this proceeding. *First National Bank of Cincinnati v. Berkshire Life Ins. Co.* (1964), 176 Ohio St. 395 [27 O.O.2d 360]. Upon reviewing the pleadings and stipulated evidence, we conclude that respondent in this proceeding is seeking to litigate an issue which was neither actually litigated, nor was necessary to the determination of the judgment rendered, in *Cummings v. Porter, supra* (Cuyahoga C.P.).

As we observed above, relators have not contended that R.C. 9.41, on its face, either imposes upon respondent a clear legal duty to grant checkoff privileges or deprives them of equal protection. Instead, they have alleged and attempted to prove that, as applied by respondent, this statute offends equal protection. Otherwise stated, relators contend that the classifications created by respondent during his tenure in office, in applying R.C. 9.41, deprived them of equal protection. The issue thus framed in this proceeding

is different from that presented to the trial court in *Cummings v. Porter, supra* (Cuyahoga C.P.).

In that case, the Court of Common Pleas found that, while respondent's predecessor had not negotiated with any labor unions concerning wages, hours and conditions of employment for his employees, he had, apparently arbitrarily, recognized four unions solely for the purpose of granting checkoff privileges to those four unions. The court, in *Cummings v. Porter, supra* (Cuyahoga C.P.), thus held that, on these facts, the classifications created by defendant Porter, in applying R.C. 9.41, bore no rational relationship to the furthering of any legitimate state interest, and, therefore, were offensive to equal protection.

We are not confronted with an identical issue in this proceeding. Here, as has been more fully set forth above, the stipulated evidence does not reveal that respondent arbitrarily discriminated among unions in granting checkoff privileges to some of his employees. Instead, it reveals that he adhered to a policy of granting the privilege only to those unions with whom he had previously negotiated labor agreements or memoranda.

It is thus clear that respondent, in applying R.C. 9.41 during his tenure in office, created classifications of a different composition than those created by his predecessor, Porter. Accordingly, in asserting in this proceeding that the classifications that respondent created while in office did not offend relators' rights to equal protection, respondent is not seeking to relitigate an identical issue which was previously resolved in *Cummings v. Porter, supra* (Cuyahoga C.P.). Therefore, we conclude that respondent should not be estopped here from asserting that he was under no clear legal duty to grant checkoff privileges to relators.

On the basis of the foregoing, we conclude that relators have failed to demonstrate in this proceeding their entitlement to the extraordinary relief they seek.

*Writ denied.*

PRYATEL and SILBERT, JJ., concur.

SILBERT, J., retired, of the Eighth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

