CINCINNATI GAS & ELECTRIC COMPANY, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as *Cincinnati Gas & Elec. Co. v. Pub. Util. Comm.*, 103 Ohio St.3d 398, 2004-Ohio-5466.]

(No. 2003–2034—Submitted May 25, 2004—Decided October 27, 2004.)

---

**Per Curiam.**

{¶ 1} This is an appeal as of right by the Cincinnati Gas & Electric Company ("CG&E") of decisions of the Public Utilities Commission of Ohio.

### Background

{¶ 2} On November 4, 2002, CG&E filed an application with the commission to modify its retail electric and certified supplier tariffs.[1] In its application, CG&E

---

1. *In the Matter of the Application of the Cincinnati Gas & Electric Company to Modify its Retail Electric Tariff and Certified Supplier Tariff,* case No. 02–2906–EL–ATA, "In re CG&E Tariffs."

sought approval of new services for governmental aggregators[2] and new requirements for certified suppliers in its service territory.

{¶ 3} In an entry dated September 2, 2003, the commission observed that a number of interested parties had filed comments regarding CG&E's application and determined that a hearing on the proposed tariff modifications should be held. In response to comments filed by the village of Indian Hill, a certified governmental aggregator, the commission directed CG&E to follow the commission rule on cooperation with governmental aggregators and provide customer information to the village.

{¶ 4} The relevant rule, former Ohio Adm.Code 4901:1–10–32(A), provided: "Each electric distribution company shall cooperate with governmental aggregators to facilitate the proper formation and functioning of governmental aggregations. Upon the request of a certified governmental aggregator, the electric distribution company shall provide, on a best efforts basis, an updated list of names, account numbers, service addresses, billing addresses, rate codes, percentage of income payment plan codes, load data, and other related customer information for all customers residing within the governmental aggregator's boundaries. The information provided shall be consistent with the information that is provided to other competitive retail electric service providers. This information shall also include like data for those customers who have opted off the pre-enrollment list and account numbers for all customers within the governmental aggregator's boundaries." 2001–2002 Ohio Monthly Record 2657.[3]

{¶ 5} CG&E then filed an application for rehearing of that order. The commission denied the application in an entry dated September 23, 2003, in which the commission again ordered CG&E to comply with the cooperation rule and to deliver the required information to the village. Thereafter, the village filed testimony on October 3, 2003, indicating that CG&E had complied with the commission's orders and had provided the village with the requested customer information. On November 21, 2003, CG&E filed a notice of appeal with this court.

{¶ 6} Each of the asserted errors listed in the notice of appeal concerns the commission's directives to CG&E to provide the village with customer information.

---

2. R.C. 4928.01(A)(13) provides: " 'Governmental aggregator' means legislative authority of a municipal corporation, a board of township trustees, or a board of county commissioners acting as an aggregator for the provision of a competitive retail electric service under authority conferred under section 4928.20 of the Revised Code."

3. The current rule recognizes competitive electric service providers under contract with a governmental aggregator and eliminates the phrase "on a best efforts basis."

{¶ 7} While CG&E's tariff modification application was originally set for hearing on October 14, 2003, the hearing has been rescheduled and has been continued at the request of the parties to allow for settlement discussions. The commission has rendered no decision on CG&E's application.

{¶ 8} This cause is before the court on the appellee's January 6, 2004 motion to dismiss the appeal. We sustain the appellee's motion based on lack of a final appealable order and on mootness.

### No Final Appealable Order

{¶ 9} R.C. 4903.13 provides that "[a] *final order* made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable." (Emphasis added.) An interim order on appeal in a pending commission proceeding will not be considered by this court. *Cincinnati v. Pub. Util. Comm.* (1992), 63 Ohio St.3d 366, 369, 588 N.E.2d 775. "Timeliness, as well as an effect on substantial rights, is necessary for a valid appeal." *Senior Citizens Coalition v. Pub. Util. Comm.* (1988), 40 Ohio St.3d 329, 332, 533 N.E.2d 353. Accordingly, this court has consistently dismissed premature appeals. E.g., *AT&T Communications of Ohio, Inc. v. Pub. Util. Comm.* (2000), 90 Ohio St.3d 1447, 737 N.E.2d 52; *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1997), 78 Ohio St.3d 1436, 676 N.E.2d 1184; *Ohio Domestic Violence Network v. Pub. Util. Comm.* (1992), 65 Ohio St.3d 438, 605 N.E.2d 13.

{¶ 10} The commission proceeding on appeal was initiated by CG&E's application for approval of proposed modifications of two of its tariffs. As earlier noted, the commission ordered a hearing on CG&E's tariff proposals, which has been continued. The commission has yet to issue an order of approval (or disapproval) of CG&E's application. Until it does so, there is no final order from which appeal can be taken.

{¶ 11} CG&E disputes the commission's characterization of its orders as interim and CG&E's appeal as premature. Rather, argues CG&E, the orders appealed from are final and appealable because they have prejudiced CG&E and caused it substantial harm.

{¶ 12} However, CG&E's claim of prejudice and harm is illusory. If CG&E has been prejudiced or harmed, it is not because of the commission orders that are the subjects of its appeal. The orders merely direct CG&E to comply with an administrative rule that exists and is applicable to CG&E independently of the commission's orders. The commission's orders are simply of no consequence to CG&E other than to serve as a reminder for CG&E to take certain actions already required of it by the administrative rule. Any prejudice or harm to

CG&E results from the existence of the administrative rule, not from the orders of the commission to comply with the rule. Thus, CG&E should direct its complaint against the administrative rule, which CG&E is free to do in the ongoing commission proceedings.

{¶ 13} CG&E's appeal is directed at interim commission orders producing no prejudice or harm to CG&E. Therefore, the commission's orders are not final appealable orders.

## Mootness

{¶ 14} The commission argues that there is nothing to be decided in this case. The commission directed CG&E to comply with the requirements of Ohio Adm.Code 4901:1–10–32(A) and, consequently, to provide certain customer information to the village. CG&E has provided the village with the required information. The information having been supplied to the village, no purpose would be served by reversing the commission and requiring the village to return the information to CG&E. The commission having directed CG&E to do something that CG&E was otherwise required to do, and CG&E having done so, the commission cannot now undo the directive given to CG&E. The commission metaphorically argues that it cannot now unring the bell.

{¶ 15} CG&E having complied with the commission's directives contained in its September 2 and 23, 2003 entries, the issue of the reasonableness and lawfulness of those directives has become moot. That an appellate court need not consider an issue, and will dismiss the appeal, when the court becomes aware of an event that has rendered the issue moot is a proposition of law that harks back almost a century. *Miner v. Witt* (1910), 82 Ohio St. 237, 238, 92 N.E. 21 (involving a completed annexation), followed by *Hagerman v. Dayton* (1947), 147 Ohio St. 313, 325–326, 34 O.O. 238, 71 N.E.2d 246 (involving payroll deductions).

{¶ 16} This proposition of law has long been applied to appeals from commission orders. In 1916 the court held that when a commission order had been carried out, no stay had been granted, and there was nothing left upon which the court's decision could operate, the appeal was moot and should be dismissed. *Pollitz v. Pub. Util. Comm.* (1916), 93 Ohio St. 483, 113 N.E. 1071. A later case involved an appeal of a commission order allowing a railroad to cease operation. *Travis v. Pub. Util. Comm.* (1931), 123 Ohio St. 355, 175 N.E. 586. After the commission's order was entered, the railroad's assets were dismantled and sold, and its employees were discharged. This court dismissed the appeal because any order the court could have issued would have been a vain act; no order of the court could have reconstituted the railroad. Id. at 359, 175 N.E. 586.

{¶ 17} In the absence of the possibility of an effective remedy, this appeal constitutes only a request for an advisory ruling from the court. The court

should decline the invitation to undertake such an abstract inquiry. That is not the proper function of the judiciary, as this court has previously observed: "It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and render judgments which can be carried into effect. It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies." *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371.

{¶ 18} The court will not perform a vain act when there is no real issue presented in the appeal. *Verizon N., Inc. v. Pub. Util. Comm.*, 101 Ohio St.3d 91, 2004-Ohio-44, 801 N.E.2d 456.

{¶ 19} CG&E does not dispute that the foregoing is an accurate statement of controlling law. Rather, it contends that the commission has misapplied the law and contrasts *Travis* with this appeal.

{¶ 20} In *Travis*, the court dismissed the appeal because it could not fashion a remedy to satisfy the appellant. However, CG&E argues that in this appeal the court has remedies available that would satisfy it. While CG&E admits that it has acted on the commission's directives, having provided the required information to the village, and that the village has used that information in its role as a governmental aggregator, it asserts that "there remain numerous remedies that could avail CG&E." CG&E then enumerates three proposed remedies: ordering the commission to "(1) require Indian Hill to pay CG&E for the list pursuant to CG&E's application before the commission; (2) direct Indian Hill to sign a supplier agreement with CG&E, to return consumers to CG&E and pay CG&E for lost revenues associated with the prior improper transfer; and/or (3) to provide CG&E due process concerning the disposition of the issues raised by Indian Hill's complaint that CG&E had not provided it consumer account information."

{¶ 21} While the proposed remedies apparently would satisfy CG&E, none is within the power of this court. CG&E's notice of appeal and its complaints of alleged commission error delimit the issues for this court's consideration in this appeal. Nowhere in its notice of appeal does CG&E raise the issue of requiring the village to pay for the information list it supplied the village.

{¶ 22} Moreover, implicit in CG&E's requested court order is that this court would determine the amount that should be paid to CG&E for the provided data. This court is without jurisdiction to make such a determination without the commission's prior determination of the amount. Moreover, there is no evidence to support any such determination.

{¶ 23} CG&E's second proposed remedy is for this court to order the commission to "direct Indian Hill to sign a supplier agreement with CG&E * * * and pay CG&E lost revenues associated with the prior improper transfer." While CG&E's notice of appeal raises the issues of execution of a supplier agreement, it in no way can support an order of this court to the commission to direct the village to take actions based on determination of ultimate fact not yet made by the commission in the proceedings on appeal.

{¶ 24} CG&E's third requested remedy is for this court to order the commission to provide CG&E due process concerning the village's complaints against it. However, there has been no showing that the commission has deprived CG&E of due process, and, in any event, the commission proceedings on appeal are ongoing.

{¶ 25} CG&E's argument that the issue presented in this appeal is not moot because there are satisfactory remedies available must fail. As CG&E concedes, "[n]one of these remedies is available to CG&E absent a Court order." But the court is powerless to issue any of the requested orders. Therefore, the remedies simply are unavailable. Thus, the court in this appeal is faced with a situation no different from that faced by the court in *Travis*.

{¶ 26} Additionally, CG&E argues that the issue presented in this appeal is not moot because it is capable of repetition yet evading review. As authority for its argument, CG&E cites *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 52, 689 N.E.2d 25. *State ex rel. Wadd* and the other Ohio Supreme Court decisions cited in that case on the question of mootness[4] were all mandamus actions brought under the Ohio Public Records Act, R.C. 149.43. They all involved requests for public records that were, in fact, produced by the respondents. This court ruled in all three cases that the production of the requested records did not render the mandamus actions moot because all three involved issues beyond production of the requested record that were "capable of repetition yet evading review."

{¶ 27} While CG&E has or may raise issues in the ongoing proceedings below that will be capable of repetition, declaring the issue of the reasonableness and lawfulness of the commission's order to be moot does not prevent later review of those issues. The question faced by the court in the three mandamus actions was whether the mandamus actions themselves were moot. If the court had answered in the affirmative, the issues surrounding the production of the public records would have evaded review. The court in this appeal is not being asked to

---

4. *State ex rel. Gannett Satellite Info. Network v. Shirey* (1997), 78 Ohio St.3d 400, 401–402, 678 N.E.2d 557, and *State ex rel. Margolius v. Cleveland* (1992), 62 Ohio St.3d 456, 457, 584 N.E.2d 665, fn. 1.

declare the ongoing proceedings before the commission to be moot. Issues surrounding CG&E's compliance with Ohio Adm.Code 4901:1–10–32(A), as ordered by the commission, can still be raised by CG&E in the ongoing commission proceedings, resulting in a final, appealable order subject to review by this court.

### Conclusion

{¶ 28} The commission's orders on appeal are not final appealable orders. Moreover, the question of the reasonableness and lawfulness of those orders has been rendered moot. Therefore, we sustain the appellee's motion and dismiss this appeal.

Appeal dismissed.

MOYER, C.J., RESNICK, F.E. SWEENEY, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, J., dissents.

———————

**PFEIFER, J., dissenting.**

{¶ 29} The majority holds that there is no final appealable order in this case and that even if there were a final order, the issue presented by Cincinnati Gas & Electric ("CG&E") is moot. I disagree with both of those holdings, especially in regard to mootness.

{¶ 30} I would hold that Indian Hill's request that the commission order CG&E to provide the village with its customer information was separate from the application that CG&E had pending before the commission at that time. In essence, the village's request constituted a separate complaint. In no way did the commission rely upon any issue pending in CG&E's application in reaching its decision. The commission held no hearing. The village got all that it asked for, without having to wait until the resolution of CG&E's underlying action to receive the full measure of the relief it sought. The village got more than a judgment—it also got its remedy. The commission's order was final, and CG&E should have had the opportunity to appeal it.

{¶ 31} Especially disturbing is this court's finding that the issue is moot because CG&E has already provided the customer information to the village. This holding feeds into what increasingly appears to be the commission's belief that its decisions are not reviewable. See *State ex rel. Consumers' Counsel v. Pub. Util. Comm.*, 102 Ohio St.3d 301, 2004-Ohio-2894, 809 N.E.2d 1146, ¶ 24 (Pfeifer, J., dissenting). Herein, the commission dismisses the idea that it has accountability for its orders, right or wrong, by arguing that it cannot "unring the bell." I view the institutional arrogance of the commission to be a continuing

problem and one that could be dealt with by addressing the legitimate issues raised by parties in cases like these. The bell needs to be answered, not unrung.

---

Paul A. Colbert and John J. Finnigan Jr., for appellant.

Jim Petro, Attorney General, Duane W. Luckey, Thomas G. Lindgren, and Thomas W. McNamee, Assistant Attorneys General, for appellee.

Janine L. Migden–Ostrander, Ohio Consumers' Counsel, Kimberly W. Bojko, Jeffrey L. Small, and Larry S. Sauer, Assistant Consumers' Counsel, urging affirmance for amicus curiae, Ohio Consumers' Counsel.